**BAKER & McKENZIE LLP**
**1114 Avenue of the Americas**
**New York, New York  10036**
**Telephone:  (212) 626-4100**
**Ira A. Reid (IR-0113)**

**Attorneys for the Foreign Representative**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    **Chapter 15** |
| | ) |
| **ASHAPURA MINECHEM LTD.,** | )    **Case No. 11-[_____]** |
| | ) |
| | ) |
| **Debtor in a Foreign Proceeding.** | ) |
| | ) |
| | ) |
| | ) |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**MAIN PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF**

Chetan Shah, in his capacity as the foreign representative (the "Foreign Representative")
of the Ashapura Minechem Ltd. ("Ashapura"), respectfully submits this verified petition (the
"Petition") (i) for recognition by this Court as Ashapura's "foreign representative" as defined in
section 101(24) of the title 11, United States Code §§ 101 *et seq.* (the "Bankruptcy Code") and
(ii) for recognition of Ashapura's financial restructuring, pursuant to the laws of India, currently
pending before the Board for Industrial and Financial Reconstruction (the "BIFR") under the
Sick Industrial Companies (Special Provisions) Act, 1985 ("SICA") as a "foreign main
proceeding" pursuant to Bankruptcy Code sections 1515, 1517, 1520 and 1521.

## Preliminary Statement

1.      Ashapura is an Indian mining company with its principal place of business in Mumbai, India and is incorporated under Indian law.

2.      On May 31, 2011, Ashapura voluntarily filed a reference petition before the BIFR in order to restructure its financial affairs under SICA (the "SICA Proceeding").  In connection with commencement of the SICA Proceeding, Ashapura's Board of Directors appointed the Foreign Representative on August 2, 2011, and authorized the Foreign Representative to seek relief in this Court under Chapter 15 of the Bankruptcy Code.

3.      In support of the Petition, the Foreign Representative has filed his Declaration as Foreign Representative (the "Foreign Representative Declaration"), which is incorporated herein by reference.  In addition, the Foreign Representative also has filed the Declaration of Rajesh Bohra, Indian counsel to Ashapura (the "Bohra Declaration").  Simultaneously with the filing of the Petition, Foreign Representative Declaration and Bohra Declaration, the Foreign Representative is filing (i) an Ex Parte Application for an Order Granting (a) Provisional Relief and Injunction (the "Provisional Relief Application") and (b) Scheduling Hearing and (ii) the Affidavit of Ira A. Reid in Support of the Provisional Relief Application (the "Reid Affidavit"), both of which are incorporated herein by reference.

4.      As set forth in the Bohra Declaration, following the reference commencing the SICA Proceeding, the case was registered by the BIFR as Case No. 34/2011, which came for preliminary hearing on July 25, 2011.  After registration of the case an inquiry under section 16(1) of SICA is deemed to commence.  That inquiry currently is in progress.  The secured creditors and bankers have been directed to file their reply and objections to the case, which is now scheduled for hearing on November 2, 2011.  Once the inquiry is completed and the BIFR is

satisfied under section 17(1) of SICA that the company has become a sick industrial company, the BIFR determines whether it is practicable for the company to make its net worth exceed the accumulated losses within a reasonable time.

5.     If the BIFR determines that it is not practicable for Ashapura to cause its net worth to exceed its accumulated losses within a reasonable time, the BIFR may order the preparation and sanctioning of a scheme for the financial reconstruction or, alternatively, a winding up.   While the BIFR inquiry is pending, or a scheme is in preparation or being sanctioned and implemented, SICA imposes a stay that prevents further proceedings to wind up the company, execution against the property of the company, appointment of a receiver, suits for recovery of money and enforcement actions, without the consent of the BIFR or the Indian appellate court.

6.     It is anticipated that the actions to be undertaken in the SICA Proceeding will achieve a significant restructuring of Ashapura's business.   Ashapura anticipates that it will emerge from this process a stronger, more competitive company.

7.     Pending development and approval of a restructuring plan, Ashapura requires the protection afforded to foreign debtors under Chapter 15 of the Bankruptcy Code, in order to protect its assets currently in the United States from seizure, and to prevent certain creditors from causing the involuntary transfer to New York of Ashapura's non-U.S. bank deposits, for the purpose of satisfying judgments against Ashapura in excess of $125 million.   Should such efforts be successful, it would irretrievably damage Ashapura's ability to restructure in India.

8.     Specifically, Ashapura requires immediate protection in the United States from the commencement or continuation of actions against it or its assets, including the following litigations which are currently pending: *Eitzen Bulk A/S v. Ashapura*, No. 08 Civ. 8319 (AKH)

(S.D.N.Y.); *Eitzen Bulk A/S v. State Bank of India*, No. 09 Civ. 10118 (AKH) (S.D.N.Y.); *Eitzen Bulk A/S v. Standard Chartered Bank*, No. 10 Civ. 7466 (AKH) (S.D.N.Y.); *Armada (Singapore) PTE Ltd. v. Ashapura*, No. 10 Civ. 4856 (CM) (S.D.N.Y.); *Armada (Singapore) PTE Ltd. v. Ashapura*, No. 10 Civ. 5509 (EEB) (N.D. Ill.); *AMCOL Int'l Corp. v. Armada (Singapore) PTE Ltd.*, No. 11 Civ. 4888 (JBZ) (N.D. Ill.); and *Eitzen Bulk A/S v. Ashapura*, No. 2011-L-050170 (Ill. Cir. Ct. Cook County) (collectively, the "U.S. Litigations").

9.      The Foreign Representative knows of three foreign creditors who have obtained London arbitration awards against Ashapura, totaling in excess of $125 million.  Two of the creditors, Eitzen Bulk A/S ("Eitzen") and Armada (Singapore) PTE Ltd. ("Armada"), are currently active in pursuing enforcement of their arbitration awards in the United States, specifically in New York and Illinois.  *See* the U.S. Litigations.

10.      In New York, Eitzen has obtained attachment and garnishment orders against Ashapura's assets and a judgment against Ashapura in excess of $36 million.  Eitzen is actively seeking the involuntary transfer to New York of Ashapura's non-U.S. bank deposits for the purpose of satisfying Eitzen's New York judgment.  In addition, Armada has obtained a New York judgment against Ashapura in excess of $70 million (inclusive of interest).

11.      In Illinois, both Eitzen and Armada have obtained attachment orders and judgments against Ashapura and both creditors are targeting assets in the amount of $687,356.52 belonging to Ashapura in the possession of an Ashapura shareholder and trading partner, AMCOL International Corp. ("AMCOL"), and two of AMCOL's subsidiaries.  There is an imminent danger that the $687,356.52 will be executed upon by Armada on or about October 7, 2011, the date set for a ruling by the Illinois federal court on Eitzen's motion to intervene in

Armada's action against Ashapura.  A detailed summary of the U.S. Litigations is set forth below in the Background section below.

12.     Ashapura seeks the protections of Chapter 15 to ensure consistent and smooth operations without disruption while the SICA Proceeding moves forward.  Protection of Ashapura's assets from United States-based litigation will help ensure that Ashapura's restructuring in the SICA Proceeding proceeds quickly.  Thus, by way of separate motion, the Foreign Representative also has sought a temporary restraining order and preliminary injunctive relief pending a hearing on recognition.

13.     To better facilitate an efficient corporate restructuring in the SICA Proceeding, pursuant to this Petition, the Foreign Representative seeks recognition (i) as Ashapura's "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and (ii) of the SICA Proceeding as a "foreign main proceeding," within the meaning of section 101(23) of the Bankruptcy Code.

**<u>Jurisdiction</u>**

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

15.     This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the SICA Proceeding in accordance with section 1515 of the Bankruptcy Code by Ashapura's duly appointed Foreign Representative.

16.     Ashapura has pending litigation and potential assets located in this District, and venue is thus proper pursuant to 28 U.S.C. §§ 1410(2) and (3).

17.     The statutory bases for relief are sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

**Background**

I.     **Ashapura's Business**

Ashapura is an industrial company incorporated under the provisions of the Companies Act, 1956, having its registered office in Mumbai, India.  It is listed with the Bombay Stock Exchange and National Stock Exchange of India, Ltd. It is engaged in the business of mining, processing and trading minerals and ores, namely:

➢ Bentonite: Bentonite is a versatile clay having applications in foundries, iron ore pellatization, oil well drilling and civil engineering.

➢ Bauxite: Bauxite is the principal ore used for manufacturing alumina which is in turn used to produce Aluminium metal.

➢ Barytes: Barytes is a clay with high specific gravity and is mainly used in oil well drilling.

➢ Iron Ore: Iron ore is the principal ore for manufacturing steel.

18.     AML is also engaged in the manufacturing of value added Bentonite for advanced applications for usage in paper, cosmetic and edible oil industries. The company also offers to arrange for logistical support for transportation and shipping of minerals which it sells to its customers.

19.     In the conduct of its business, Ashapura entered into Contracts of Affreightment ("COAs") with four shipping companies named British Marine Plc., Eitzen Bulk A/s Norway,

IHX (UK) Ltd. and Armada (Singapore) Pte. Ltd. (collectively, the "Shipping Companies").
After execution of the COAs, however, the Government of Gujarat placed an indirect embargo
upon the export of bauxite mined in the State of Gujarat. As a result, it became impossible for
Ashapura to export under the COAs. Simultaneously, Ashapura was informed by its agents that
the Indian customs authorities had demanded its the license granted by the Director General of
Shipping to call vessels for loading purposes. Thus, although Ashapura was willing to perform
under the COAs, it was compelled to declare the COAs frustrated on the grounds of *force
majeure*.

20.     The Shipping Companies subsequently sought and obtained arbitration awards
against Ashapura in London totaling over $125 million. Specifically, Eitzen obtained an award
in the amount of $36 million on May 26, 2009, IHX obtained an award in the amount of $24
million on July 8, 2009, and Armada obtained an award in the amount of $65 million on
February 16, 2010. Ashapura did not participate in the arbitration proceedings, believing the
COAs to be void *ab initio* as not conforming to the rules and registration formalities of maritime
contracts in India.

21.     After the arbitration damage claims were awarded to the Shipping Companies,
Ashapura initiated proceedings before the Civil Court in Jamkhambaliya, Gujarat, contending
that the awards were against Indian public policy. The Shipping Companies countered by
commencing arbitration proceedings before the Bombay High Court.

22.     On or about September 26, 2008, Eitzen commenced an action against Ashapura
in the United States District Court for the Southern District of New York (the "SDNY") in aid of
its arbitration proceedings against Ashapura in London and to obtain security with respect to its
claims. *See Eitzen Bulk A/S v. Ashapura*, No. 08 Civ. 8319 (AKH) (S.D.N.Y.). In this action,

Eitzen sought and obtained maritime attachment and garnishment orders against Ashapura's assets under Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims ("Maritime Rule B").  Subsequently, Eitzen filed a motion for entry of judgment recognizing and confirming its London arbitration award and, on July 24, 2009, Eitzen obtained a judgment against Ashapura for a sum in excess of $36 million.

23.    Thereafter, Eitzen registered the judgment in the Supreme Court for the State of New York, County of New York and commenced a *Koehler*[1] action against the banks in which Ashapura maintains large cash deposits, including State Bank of India ("SBI"), Bank of India, BNP Paribas and ICICI Bank, in an attempt to compel the transfer of those deposits to New York for execution by Eitzen in satisfaction of its $36 million New York judgment against Ashapura. On or about December 10, 2009, SBI removed the action to the SDNY.  *See Eitzen Bulk A/S v. State Bank of India*, No. 09 Civ. 10118 (AKH) (S.D.N.Y.).  This action is still pending against Bank of India.

24.    On or about September 29, 2010, Eitzen commenced another *Koehler* action in the SDNY against Standard Chartered Bank, Wells Fargo & Co. ("Wells Fargo"), and JPMorgan Chase & Co. ("JPMorgan"), again seeking to compel the transfer of Ashapura's assets to New York for execution by Eitzen in satisfaction of its New York judgment against Ashapura.  *See Eitzen Bulk A/S v. Standard Chartered Bank*, No. 10 Civ. 7466 (AKH) (S.D.N.Y.).  This action is still pending against Wells Fargo and JPMorgan.

---

[1]  In *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 911 N.E.2d 825, 883 N.Y.S.2d 763 (2009), the New York Court of Appeals ruled that a court sitting in New York has the power to require a foreign bank over which the court has personal jurisdiction to satisfy a judgment against the bank's customer by delivering into New York assets that had been held by the bank outside the state, or even outside the country.  The court relied on Section 5225(b) of New York State's Civil Practice Law and Rules, which authorizes a judgment creditor to enforce its judgment by commencing a special proceeding against a garnishee holding assets belonging to the judgment debtor, and obtain a "turnover order" or "delivery order" compelling the garnishee to deliver the property in which the judgment debtor has an interest, or to convert it to money for the payment of the debt, even where the property is located outside New York.

25.     On or about June 22, 2010, Armada[2] filed a petition in the SDNY for an order confirming its London arbitration award against Ashapura. *See Armada (Singapore) PTE Ltd. v. Ashapura*, No. 10 Civ. 4856 (CM) (S.D.N.Y.). On July 29, 2011, Armada's motion to confirm was granted and a judgment was entered against Ashapura in excess of $70 million.

26.     On or about August 31, 2010, Armada filed an action against Ashapura in the United States District Court for the Northern District of Illinois (the "Illinois District Court") pursuant to Maritime Rule B to obtain security for the eventual enforcement of its New York judgment. *See Armada (Singapore) PTE Ltd. v. Ashapura*, No. 10 Civ. 5509 (EEB) (N.D. Ill.). In this action, Armada has caused the issuance of various writs of maritime attachments and garnishment to various banks and entities and is actively seeking to apply certain funds belonging to Ashapura to satisfy its judgment. Specifically, Armada has targeted assets in the amount of $687,356.52 belonging to Ashapura that is in the possession of AMCOL, an Ashapura shareholder and trading partner, and AMCOL's subsidiaries, Volclay International Corp. and American Colloid Co. (collectively, the "AMCOL Garnishees") The funds are excess proceeds from a stock sale owed to Ashapura. On August 29, 2011, the Illinois District Court confirmed Armada's London arbitration award and issued an order directing the AMCOL Garnishees to turn over the $687,356,52 to Armada.

27.     On September 7, 2011, Eitzen filed a motion to intervene in Armada's Illinois District Court action, asserting claims to the $687,356.52 based on an action it had filed in the Illinois Circuit Court of Cook County (*see* summary of this action below) and seeking a stay of Armada's judgment until the disposition of Eitzen's motion to intervene. The Illinois District

---

[2] Armada itself has filed for bankruptcy protection in Singapore and a recognition proceeding under Chapter 15 of the Bankruptcy Code in the United Bankruptcy Court for the Southern District Court (the "Armada Chapter 15 Case"). *See In re Armada (Singapore) PTE Ltd.*, 09-10105 (JMP) (Bankr. S.D.N.Y.).

Court granted a stay of Armada's judgment until October 7, 2011, at which time the court will rule on Eitzen's motion to intervene.

28. On or about February 16, 2011, Eitzen filed in the Circuit Court of Cook County an action to register a foreign judgment. Eitzen had obtained an English judgment based on its London arbitration award and used Illinois procedure to register the English judgment as an Illinois judgment in an amount in excess of $36 million. *See Eitzen Bulk A/S v. Ashapura*, No. 2011-L-50170 (Ill. Cir. Ct. Cook County). On or about February 18, 2011, Eitzen served garnishment notices and summonses on the AMCOL Garnishees seeking information concerning their indebtedness to Ashapura and any funds or property belonging to Ashapura in their custody. On or about May 3, 2011, the AMCOL Garnishees moved for a protective order staying the Eitzen action on the grounds that Eitzen is seeking garnishment of the same assets as those subject to the Armada action in the Illinois District Court. The Illinois Circuit Court entered and continued the motion by the AMCOL Garnishees, but did not stay the action and has permitted Eitzen to continue discovery efforts against them.

29. On or about July 20, 2011, the AMCOL Garnishees filed an interpleader complaint in the Illinois District Court because of the conflicting claims by Armada and Eitzen to the same assets, i.e., the assets in the possession of the AMCOL Garnishees that are owned by or owed to Ashapura, including the $687,356.52. *AMCOL Int'l Corp. v. Armada (Singapore) PTE Ltd.*, No. 11 Civ. 4888 (JBZ) (N.D. Ill.). The action is still pending.

30. In an effort to protect its assets currently in the United States from seizure, and to prevent certain creditors from causing the involuntary transfer to New York of Ashapura's non-U.S. bank deposits, and thereby improve Ashapura's ability to restructure in India, the Foreign Representative filed this Chapter 15 Petition.

II. **Ashapura's Debt Obligations**

31.     Ashapura is obliged under secured working capital loans from Bank of India, Union Bank of India, AXIS Bank, EXIM Bank, DBS, HSBC and HDFC in the aggregate amount of approximately $62.56 million as of March 31, 2011.  In addition, Ashapura is obligated under secured term loans from Union Bank of India, EXIM Bank and Federal Bank in the aggregate amount of an additional $7.51 million as of March 31, 2011, resulting in aggregate secured debt of approximately $70.07 million.  This debt is secured by substantially all of Ashapura's assets.

32.     The security interest in Ashapura's assets includes deposit accounts in Ashaputa's name at various banks including Bank of India.

33.     Ashapura also is obligated to general unsecured creditors in the amount of approximately $154 million, of which nearly $26 million represents obligations owed to trade creditors, $125 million represent judgments obtained by the Shipping Companies and approximately $2.4 million represent intercompany loans.

**Commencement of the SICA Proceeding**

34.     Over the course of the past few years, Ashapura, like many other entities in a variety of industries throughout the world, has faced significant challenges.  The worldwide recession that has taken hold over the past three years has created an environment of economic distress for companies and individuals alike, and that environment has impacted Ashapura's operations.  Ashapura's operations have been impacted over the past three years by a dramatic increase in bauxite orders accompanied by difficulties in exporting the bauxite, significant foreign exchange losses in connection with derivative transactions that it had entered into with Indian banks to hedge against foreign exchange risks spiraling freight costs and a rise in aluminum and commodity prices.

35.     As a result of the foregoing, Ashapura faces financial and operational hurdles that made it prudent to seek relief under SICA in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

36.     On May 30, 2011, the Board of Directors of Ashapura authorized the commencement of the SICA Proceeding. On May 31, 2011, Ashapura initiated the SICA Proceeding pursuant to the provisions of SICA.

37.     On August 2, 2011, the Board of Directors of Ashapura authorized the commencement of this Chapter 15 case and also authorized Chetan Shah to act as Ashapura's Foreign Representative in connection with this Chapter 15 case.

## Relief Requested

38.     For the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (i) recognizing the SICA Proceeding as "a foreign main proceeding" pursuant to 11 U.S.C. §§ 1517(a) and (b)(1) and providing the protections and benefits identified in Bankruptcy Code Section 1521; and (ii) recognizing the Foreign Representative as the duly appointed "foreign representative," as defined in 11 U.S.C. § 101(24), of Ashapura

## Grounds For Relief Requested

39.     Chapter 15 of the Bankruptcy Code is designed to assist foreign representatives to protect assets located in the United States that belong to a foreign debtor that has commenced insolvency proceedings in a foreign jurisdiction. *See* 11 U.S.C. § 1501(b). Among the purposes of Chapter 15 are: (i) to encourage cooperation between U.S. and foreign courts; (ii) to promote the fair and efficient administration of cross-border insolvencies that protect creditors, debtors, and other parties-in-interest; and (iii) to protect and maximize the value of the debtor's assets.

Consistent with those principles, the Foreign Representative commenced this Chapter 15 case to obtain recognition of the SICA Proceeding as a foreign "main" proceeding. The Foreign Representative believes that this Chapter 15 case will complement Ashapura's primary proceedings in India to ensure the effective and economic administration of Ashapura's restructuring efforts.

### III. The Requirement For Recognition As A Foreign Main Proceeding Are Satisfied

40. Section 1517(a) of the Bankruptcy Code provides that a court shall enter an order granting recognition of a foreign proceeding if:

> (i)      such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (ii)     the foreign representative applying for recognition is a person or body; and the Petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1517(b), in turn, provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The Foreign Representative submits that all of the requirements for recognition of a foreign main proceeding are satisfied.

> (iii)    *The SICA Proceeding is a "Foreign Proceeding"*

41. As a threshold matter, the SICA Proceeding is a "foreign proceeding" as that term is defined in the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

42.     The SICA Proceeding meets this definition because it is a collective administrative proceeding under SICA, administered by the BIFR, which relates to insolvency and adjustment of debt. The purpose of the SICA Proceeding is to allow financially troubled businesses time to either craft and execute a financial restructuring or wind down. The process is controlled by the BIFR, which has authority at the outset to grant or deny the SICA referral and has review and approval rights over any restructuring on wind down.

43.     Under SICA, though Ashapura will remain in control of its business and operations, the process of forming the plan of restructuring is overseen by the BIFR, who exercises powers similar to a bankruptcy court on the United States.  For this reason, Ashapura's assets are and will continue to be "subject to control or supervision by a foreign court" through the SICA Proceeding, and all of the requirements of section 101(23) are met.

(iv)     *The SICA Proceeding Qualifies as a Foreign "Main" Proceeding*

44.     Once it is determined that the SICA Proceeding is a foreign proceeding, the question becomes whether the foreign proceeding is entitled to recognition, and if so, whether as a foreign "main" or "nonmain" proceeding.  Section 1502(5) defines a foreign "nonmain" proceeding as one which is pending in a country where the debtor has an "establishment," which in turn is defined in Section 1502(2) as "any place of operations where the debtor carries out a nontransitory economic activity."  Section 1502(4), in turn, defines a foreign "main" proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).  Thus, it must be shown that the SICA Proceeding is located in the center of Ashapura's main interests in order for the SICA Proceeding to be considered a foreign "main" proceeding.

45.     Although the Bankruptcy Code does not provide a conclusive test to determine what constitutes a debtor's center of main interests, pursuant to section 1516 of the Bankruptcy Code it is presumed, absent evidence to the contrary, that the debtor's center of main interests is located where the debtor has its registered office. 11 U.S.C. § 1516(c). The concept of center of main interests has been equated by courts to the concept of a debtor's "principal place of business." *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).

46.     There is no doubt that India is Ashapura's "center of main interests." Ashapura is headquartered in India and the vast majority of it's assets are located in India, as are all of its employees.  Ashapura is a registered company under the Indian Companies Act, 1956, and is listed on the Bombay Stock Exchange and national Stock Exchange of India, Ltd.  It is engaged in the business of mining and mineral processing in India.  Therefore, it is appropriately presumed that Ashapura's center of main interests is in India.  As the SICA Proceeding is a foreign proceeding located where Ashapura's "center of main interests" are located, it is a "foreign main proceeding" under the Bankruptcy Code.

(v)     *The Foreign Representative Meets the Statutory Requirements*

47.     The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the "foreign representative applying for recognition be a person or body." *See* 11 U.S.C. § 1517(a)(2).

48.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

49.     Courts in this district have on numerous occasions held that a foreign representative may be appointed by a debtor's board of directors, and need not be appointed by the foreign court overseeing the foreign proceeding.[3]  *See, e.g., In re Bd. Of Dirs. of Hopewell*, 275 B.R. 699, 707 (S.D.N.Y. 2002) (holding that company's board of directors qualified as foreign representative); *see also In re Bd. of Dirs. Of Telecom Argentina S.A.,* No. 05-17811 (BRL), 2006 WL 686867 at *21 (Bankr. S.D.N.Y. Feb. 24, 2006) (same); *In re Netia Holdings*, 277 B.R. 571, 587 n. 76 (Bankr. S.D.N.Y. 2002) (same).  Indeed, neither section 101(24) nor Chapter 15 of the Bankruptcy Code requires foreign representatives to be appointed by foreign courts. *See In re Hopewell*, 275 BR. 699, 707 (S.D.N.Y. 2002) (interpreting prior version of section 101(24) of the Bankruptcy Code and stressing that "nothing in the statute requires a court appointment").  Although there is little authority interpreting the current version of section 101(24), nothing in the plain text of the statute requires that a foreign representative be appointed by court order. Rather, section 101(24) simply requires that a foreign representative be "authorized" to administer the reorganization or the liquidation of the debtor's assets or affairs or act as a representative of the foreign proceeding.  *See* 11 U.S.C. § 101(24).

50.     Consistent with this reasoning, in *In re Corporacion Durango, S.A.B. de C.V.,* this Court recognized, in a case involving a proceeding in Mexico, an officer of the debtor as a duly

---

[3] The definition of "foreign representative" was amended in 2005 as follows (italicized text representing additions, and stricken text representing deletions):

*The term* "foreign representative" means ~~duly selected trustee, administrator, or other representative of an estate in a foreign proceeding~~ *a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.*

*See* Lawrence P. King, 2 COLLIER ON BANKRUPTCY ¶ 101.24 (15th ed. revised 2009).

authorized foreign representative of the debtor within the meaning of sections 101(24) and 1515(a)(2) of the Bankruptcy Code. The foreign representative in *Corporacion Durango* was not appointed by the Mexican court, but was instead appointed by the debtor's board of directors prior to the filing of its Concurso proceeding. *See In re Corporacion Durango, S.A.B. de C.V.,* No. 08-13911 (RDD) (Bankr. S.D.N.Y. Dec. 11, 2008).

51.    Chetan Shah is an individual that has been duly appointed by Ashapura's Board of Directors. The requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code have been met. Accordingly, Chetan Shah should be recognized by the Court as Ashapura's Foreign Representative.

(vi)    *The Requirements of Bankruptcy Code Section 1515 have Been Met*

52.    The final requirement for recognition of a foreign main proceeding is compliance with the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code. Section 1515 (i) requires that a petition be filed with the court and (ii) lists the documents and statements that must accompany the petition for recognition. *See* 11 U.S.C. § 1515. All of the requirements of section 1515 of the Bankruptcy Code have been met.

53.    First, the Chapter 15 Petition in this case was properly filed by the Foreign Representative on behalf of Ashapura, as required by section 1515(a) of the Bankruptcy Code.

54.    Second, documents evidencing: (i) the appointment of the Petitioner as foreign representative and (ii) the commencement and existence of the SICA Proceeding, in the form of the Board Resolution and SICA reference, have been provided, in English, as Exhibits A though D, respectively, to the Foreign Representative Declaration, as required under section 1515(b).

55.    Finally, as is required by to section 1515(c), the Foreign Representative Declaration includes a statement identifying the SICA Proceeding as the only foreign proceeding currently pending with respect to Ashapura. *See* Foreign Representative Declaration.

## **Conclusion**

Based upon the foregoing, the Foreign Representative respectfully requests that the Court enter an order, if the Form annexed hereto as Exhibit A, finding that: (i) the Foreign Representative meets the statutory requirements of 11 U.S.C. §§ 101(24) and 1517(a)(2); and (ii) that the SICA Proceeding qualifies as a foreign main proceeding under the statutory requirements of 11 U.S.C. §§ 101(23), 1502(4) and 1516(c), and grant such other and further relief as is necessary and appropriate.

Dated: New York, New York
        October 3, 2011

                                    **BAKER & McKENZIE LLP**

                                    By:    /s/ Ira A. Reid_____

                                        Ira A. Reid (IR-0113)
                                        1114 Avenue of the Americas
                                        New York, New York 10036
                                        Telephone:  (212) 626-4100

                                        Attorneys for Foreign Representative

## Verification

I, Chetan Shah, as Foreign Representative of Ashapura Minechem Ltd., hereby declare, pursuant to 28 U.S.C. § 1746, that the foregoing statements made in connection with this Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief are true and correct.

Dated: Mumbai, India
October 3, 2011

_____
Chetan Shah

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | )<br>)  **Chapter 15**<br>) |
| **ASHAPURA MINECHEM LTD.,** | )  **Case No. 11-[___]**<br>)<br>)<br>) |
| **Debtor in a Foreign Proceeding.** | )<br>) |
| | ) |

**ORDER PURSUANT TO**
**11 U.S.C.§§ 1504, 1515, 1517, 1520 AND 1521 RECOGNIZING**
**FOREIGN REPRESENTATIVE AND FOREIGN MAIN PROCEEDING**

Upon the Verified Petition for Recognition and Chapter 15 Relief (the "Petition")[1] seeking (a) recognition of the Foreign Representative as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code of the above-captioned debtor (the "Debtor"); and (b) recognition of the Debtor's reorganization proceedings under Indian law currently pending before the Board for Industrial and Financial Reconstruction (the "BIFR" and "SICA Proceeding"), as a foreign main proceeding pursuant to sections 1515 and 1517 of 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); and upon the hearing on the Petition and this Court's review and consideration of the Petition, the Foreign Representative Declaration, and the Bohra Declaration;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Petition.

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

1.      This Court has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.

2.      Consideration of the Petition and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1410 (2) and (3).

4.      Good, sufficient, appropriate and timely notice of the filing of the Petition and the hearing on the Petition has been given by the Foreign Representative, pursuant to Bankruptcy Rule 2002(q), to: (a) the Office of the United States Trustee: (b) Board for Industrial and Financial Reconstruction; (c) Ashapura's prepetition banks; and d) the Shipping Companies.   The Foreign Representative believes that such notice and service constitutes reasonable and proper notice under the circumstances.

5.      No objections or other responses were filed that have not been overruled, withdrawn or otherwise resolved.

6.      The Chapter 15 proceeding was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

7.      The Foreign Representative is a "person" pursuant to section 101(41) of the Bankruptcy Code and is the "foreign representative" of the Debtor as such term is defined in section 101(24) of the Bankruptcy Code, and the Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

---

[2]  The findings and conclusions set forth herein and in the record of the hearing on the Petition constitute this Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

8.     The SICA Proceeding is pending in India, where the Debtor's "center of main interests," as referred to in section 1517(b)(1) of the Bankruptcy Code, is located, and accordingly, the SICA Proceeding is a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(l) of the Bankruptcy Code.

9.     The Foreign Representative is the duly appointed foreign representative of the Debtor within the meaning of section 101(24) of the Bankruptcy Code.

10.     The Foreign Representative is entitled to all the relief provided pursuant to sections 1520 and 1521(a)(5) of the Bankruptcy Code without limitation, because those protections are necessary to effectuate the purposes of Chapter 15 of the Bankruptcy Code and to protect the assets of the Debtor and the interests of the Debtor's creditors.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:

11.     The Petition is granted.

12.     The SICA Proceeding is recognized as a foreign main proceeding pursuant to section 1517(a) and 1517(b)(l) of the Bankruptcy Code, and all the effects of recognition as set forth in section 1520 of the Bankruptcy Code shall apply.

13.     Upon entry of this Order:  pursuant to section 1520 of the Bankruptcy Code, the SICA Proceeding shall be given its full force and effect; and, among other things:

> (i)     the protections of section 362 of the Bankruptcy Code apply with respect to the Debtor and the property of the Debtor in the territorial jurisdiction of the United States;
>
> (ii) all persons and entities are enjoined from seizing, attaching and/or enforcing or executing liens or judgments against the Debtor's property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtor's assets or agreements, rights services and operations in the United States without (a) an order from the BIFR or this Court permitting such action or (b) the express written consent of the Foreign Representative; and

(iii) all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtor or its assets or proceeds thereof that are located in the United States, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtor or its assets or proceeds thereof that are located in the United States without (a) an order from the BIFR or this Court permitting such action or (b) the express written consent of the Foreign Representative.

14.     Notwithstanding anything to the contrary in the immediately preceding paragraph above, any party may move the Court for relief from the restrictions of such paragraph for good cause shown.

15.     The Foreign Representative is hereby established as the representative of the Debtor with full authority to administer the Debtor's assets and affairs in the United States.

16.     The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

17.     The Foreign Representative, the Debtor and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

18.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Dated: New York, New York
        October, __ 2011


_____
United States Bankruptcy Judge

NYCDMS/1193894.4