**BAKER & McKENZIE LLP**
**1114 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 626-4100**
**Ira A. Reid (IR-0113)**

**Attorneys for the Foreign Representative**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| ASHAPURA MINECHEM LTD., | ) Case No. 11-[＿＿＿＿] |
| | ) |
| | ) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |
| | ) |
| | ) |

## DECLARATION OF CHETAN SHAH
## PURSUANT TO 28 U.S.C. § 1746

I, Chetan Shah, in my capacity as the foreign representative (the "Foreign Representative") of Ashapura Minechem Ltd. ("Ashapura") declare, under penalty of perjury under the laws of the United States, that the following is true and correct:

1.     I hereby submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief (the "Petition") filed by Ashapura seeking an order (i) recognizing the financial restructuring proceeding commenced by Ashapura , pursuant to the laws of India, currently pending before the Board for Industrial and Financial Reconstruction (the "BIFR") under the Sick Industrial Companies (Special Provisions) Act, 1985 ("SICA"), as a "foreign main proceeding" pursuant to Bankruptcy Code sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"). This Declaration is also submitted in support of Ashapura's Ex Parte Request for

1

Provisional and Interim Relief pursuant to section 1519 of the Bankruptcy Code. Except as set forth below, I have personal knowledge of the matters set forth in this Declaration.

2.      I am an officer of Ashapura, holding the title of Managing Director. Ashapura is an Indian mining company with its principal place of business in Mumbai, India and is incorporated under Indian law. Through my position at Ashapura, I am familiar with it's operations, property and liabilities, both in India and the United States, as well as its financial condition.

3.      On May 31, 2011, Ashapura voluntarily filed a reference petition before the BIFR in order to restructure its financial affairs under SICA (the "SICA Proceeding"). True and correct copies of the documents evidencing the SICA Proceeding are annexed as Exhibits A and B.

4.      In connection with commencement of the SICA Proceeding, Ashapura's Board of Directors appointed me the Foreign Representative on August 2nd, 2011, and authorized me as the Foreign Representative to seek relief in this Court under Chapter 15 of the Bankruptcy Code. In order to carry out my duties, I have been granted power by Ashapura's Board of Directors to, among other things, initiate legal proceedings in the United States on behalf of Ashapura, including this Chapter 15 case. True and correct copies of the Board Resolutions, granting authority by Ashapura, are annexed as Exhibit C and D.

5.      Pursuant to the authority granted to me by Ashapura's Board of Directors, I have caused this Chapter 15 case to be commenced through the filing of the Petition.

## Ashapura's Business

6.      Ashapura is an industrial company incorporated under the provisions of the Companies Act, 1956, having its registered office in Mumbai, India. It is listed with the Bombay

Stock Exchange and National Stock Exchange of India, Ltd. It is engaged in the business of mining, processing and trading minerals and ores, namely:

- Bentonite: Bentonite is a versatile clay having applications in foundries, iron ore pellatization, oil well drilling and civil engineering.

- Bauxite: Bauxite is the principal ore used for manufacturing alumina which is in turn used to produce Aluminium metal.

- Barytes: Barytes is a clay with high specific gravity and is mainly used in oil well drilling.

- Iron Ore: Iron ore is the principal ore for manufacturing steel.

7.     AML is also engaged in the manufacturing of value added Bentonite for advanced applications for usage in paper, cosmetic and edible oil industries. The company also offers to arrange for logistical support for transportation and shipping of minerals which it sells to its customers.

8.     In the conduct of its business, Ashapura entered into Contracts of Affreightment ("COA") with four shipping companies named British Marine Plc., Eitzen Bulk A/s Norway, IHX (UK) Ltd. and Armada (Singapore) Pte. Ltd. (collectively, the "Shipping Companies"). After execution of the COAs, however, the Government of Gujarat placed an indirect embargo upon the export of bauxite mined in the State of Gujarat. As a result, it became impossible for Ashapura to export bauxite under the COAs. Simultaneously, Ashapura was informed by its agents that the Indian customs authorities had demanded its the license granted by the Director General of Shipping to call vessels for loading purposes. Thus, although Ashapura was willing to perform under the COAs, it was compelled to declare the COAs frustrated on the grounds of *force majeure*.

9.    The Shipping Companies subsequently sought and obtained arbitration awards against Ashapura in London totaling over $125 million. Specifically, Eitzen obtained an award in the amount of $36 million on May 26, 2009, IHX obtained an award in the amount of $24 million on July 8, 2009, and Armada obtained an award in the amount of $65 million on February 16, 2010. Ashapura did not participate in the arbitration proceedings, believing the COAs to be void *ab initio* as not conforming to the rules and registration formalities of maritime contracts in India.

10.    After the arbitration damage claims were awarded to the Shipping Companies, Ashapura initiated proceedings before the Civil Court in Jamkhambaliya, Gujarat, contending that the awards were against Indian public policy. The Shipping Companies countered by commencing arbitration proceedings before the Bombay High Court.

11.    Pending development and approval of a restructuring plan in under SICA, Ashapura requires the protection afforded to foreign debtors under Chapter 15 of the Bankruptcy Code, in order to protect its assets currently in the United States from seizure, and to prevent certain creditors from causing the involuntary transfer to New York of Ashapura's non-U.S. bank deposits, for the purpose of satisfying judgments against Ashapura in excess of $125 million. Should such efforts be successful, it would irretrievably damage Ashapura's ability to restructure in India.

12.    Specifically, Ashapura requires immediate protection in the United States from the commencement or continuation of actions against it or its assets, including the following litigations which are currently pending: *Eitzen Bulk A/S v. Ashapura*, No. 08 Civ. 8319 (AKH) (S.D.N.Y.); *Eitzen Bulk A/S v. State Bank of India*, No. 09 Civ. 10118 (AKH) (S.D.N.Y.); *Eitzen Bulk A/S v. Standard Chartered Bank*, No. 10 Civ. 7466 (AKH) (S.D.N.Y.); *Armada (Singapore)*

*PTE Ltd. v. Ashapura*, No. 10 Civ. 4856 (CM) (S.D.N.Y.); *Armada (Singapore) PTE Ltd. v. Ashapura*, No. 10 Civ. 5509 (EEB) (N.D. Ill.); *AMCOL Int'l Corp. v. Armada (Singapore) PTE Ltd.*, No. 11 Civ. 4888 (JBZ) (N.D. Ill.); and *Eitzen Bulk A/S v. Ashapura*, No. 2011-L-050170 (Ill. Cir. Ct. Cook County) (collectively, the "U.S. Litigations").

13.    The Foreign Representative knows of three foreign creditors who have obtained London arbitration awards against Ashapura, totaling in excess of $125 million. Two of the creditors, Eitzen Bulk A/S ("Eitzen") and Armada (Singapore) PTE Ltd. ("Armada"), are currently active in pursuing enforcement of their arbitration awards in the United States, specifically in New York and Illinois.

14.    In New York, Eitzen has obtained attachment and garnishment orders against Ashapura's assets and a judgment against Ashapura in excess of $36 million. Eitzen is actively seeking the involuntary transfer to New York of Ashapura's non-U.S. bank deposits for the purpose of satisfying Eitzen's New York judgment. In addition, Armada has obtained a New York judgment against Ashapura in excess of $70 million (inclusive of interest).

15.    In Illinois, both Eitzen and Armada have obtained attachment orders and judgments against Ashapura and both creditors are targeting assets in the amount of $687,356.52 belonging to Ashapura in the possession of an Ashapura shareholder and trading partner, AMCOL International Corp. ("AMCOL"), and two of AMCOL's subsidiaries. There is an imminent danger that the $687,356.52 will be executed upon by Armada on or about October 7, 2011, the date set for a ruling by the Illinois federal court on Eitzen's motion to intervene in Armada's action against Ashapura. A detailed summary of the U.S. Litigations is set forth in the Petition.

16.     Ashapura seeks the protections of Chapter 15 to ensure consistent and smooth operations without disruption while the SICA Proceeding moves forward. Protection of Ashapura's assets from United States-based litigation will help ensure that Ashapura's restructuring in the SICA Proceeding proceeds quickly. Thus, by way of separate motion, the Foreign Representative also has sought a temporary restraining order and preliminary injunctive relief pending a hearing on recognition.

17.     Ashapura also is obliged under secured working capital loans from Bank of India, Union Bank of India, AXIS Bank, EXIM Bank, DBS, HSBC and HDFC in the aggregate amount of approximately $62.56 million as of March 31, 2011.. In addition, Ashapura is obligated under secured term loans from Union Bank of India, EXIM Bank and Federal Bank in the aggregate amount of an additional $7.51 million as of March 31, 2011, resulting in aggregate secured debt of approximately $70.07 million. This debt is secured by substantially all of Ashapura's assets.

18.     The security interest in Ashapura's assets includes deposit accounts in Ashaputa's name at various banks including Bank of India.

19.     Ashapura also is obligated to general unsecured creditors in the amount of approximately $154 million, of which nearly $26 million represents obligations owed to trade creditors, $125 million represent judgments obtained by the Shipping Companies and approximately $2.4 million represent intercompany loans.

20.     Over the course of the past few years, Ashapura, like many other entities in a variety of industries throughout the world, has faced significant challenges. The worldwide recession that has taken hold over the past three years has created an environment of economic distress for companies and individuals alike, and that environment has impacted Ashapura's operations. Ashapura's operations have been impacted over the past three years by a dramatic

increase in bauxite orders accompanied by difficulties in exporting the bauxite, significant foreign exchange losses in connection with derivative transactions that it had entered into with Indian banks to hedge against foreign exchange risks spiraling freight costs and a rise in aluminum and commodity prices.

21.     As a result of the foregoing, Ashapura faces financial and operational hurdles that made it prudent to seek relief under SICA in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

22.     The restructuring contemplated to be undertaken in the SICA Proceeding will achieve a significant restructuring of Ashapura's business. Ashapura anticipates that it will emerge from this restructuring process a stronger, more competitive company, and believes that the benefits to be gained from the restructuring process.

23.     Ashapura seeks the protections of Chapter 15 to ensure consistent and smooth operations without disruption while the SICA Proceeding moves forward. Protection of Ashapura's United States-based assets will help ensure that Ashapura's restructuring in the SICA Proceeding proceeds quickly. Thus, by way of separate motion, the Foreign Representative also has sought a temporary restraining order and preliminary injunctive relief pending a hearing on recognition.

### Statement Pursuant to Bankruptcy Code Section 1515(c)

24.     I am informed that section 1515 of the Bankruptcy Code provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).

25.     In compliance with section 1515(c), I hereby declare that the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to Ashapura known to me is the SICA Proceeding.

### List Pursuant to Bankruptcy Rule 1007(a)(4)

26.     I am informed that Bankruptcy Rule 1007(a)(4) requires that a foreign representative filing a petition for recognition under chapter 15 file, with the petition (a) a corporate ownership statement containing the information described in Rule 7007.1 and (b) unless the Court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.

27.     In compliance with Bankruptcy Rule 1007(a)(4), I hereby provide the following information:

- Corporate Ownership.

## ASHAPURA MINECHEM LIMITED

## SHAREHOLDING PATTERN AS ON 31ST MARCH, 2011

| Categories | Total No. of Shares | % of Holdings |
|---|---|---|
| A) **Promoters Holding** | | |
| Individuals | 34968741 | 44.2720 |
| Bodies Corporate | 93040 | 0.1178 |
| **Total (A)** | **35061781** | **44.3898** |
| B) **Public Holding** | | |
| i) **Institutions** | | |
| Mutual Fund | 130000 | 0.1646 |
| Foreign Mutual Fund | 1065080 | 1.3484 |
| Foreign Inst. Investors | 3566026 | 4.5148 |
| Nationalised Bank | 21900 | 0.0277 |
| Non-nationalised Bank | 21690 | 0.0275 |
| **Total (B)(i)** | **4804696** | **8.6826** |

| i) | **Non-Institutions** | | |
|---|---|---|---|
| | Bodies Corporate | 3304604 | 4.1838 |
| | Foreign Company | 15714690 | 19.8955 |
| | Non Resident Indian | 995955 | 1.2609 |
| | Non Resident (non repatriable) | 898474 | 1.1375 |
| | Market Maker | 261841 | 0.3315 |
| | Clearing Members | 175505 | 0.2222 |
| | Trust | 1434340 | 1.8159 |
| | Public | 16334212 | 20.6800 |
| **Total (B)(ii)** | | **39119621** | **49.5273** |
| **Total B - (B)(i) + (B)(ii)** | | **43924357** | **55.6103** |
| **Grand Total (A+B)** | | **78986098** | **100.0000** |

- **Administrators in SICA Proceeding.** Following the reference commencing the SICA Proceeding, the case was registered by the BIFR as Case No. 34/2011, which came for preliminary hearing on July 25, 2011. After registration of the case an inquiry under section 16(1) of SICA is deemed to commence. That inquiry currently is in progress. The secured creditors and bankers have been directed to file their reply and objections to the case, which is now scheduled for hearing on November 2, 2011. Once the inquiry is completed and the BIFR is satisfied under section 17(1) of SICA that the company has become a sick industrial company, the BIFR will determine whether it is practicable for the company to make its net worth exceed the accumulated losses within a reasonable time. If the BIFR determines that it is not practicable for Ashapura to cause its net worth to exceed its accumulated losses within a reasonable time, the BIFR may order the preparation and sanctioning of a scheme for the financial reconstruction or, alternatively, a winding up.

- <u>Parties to Litigation in the United States.</u>

1) Eitzen Bulk A/S A company incorporated under the laws of Norway, having its office at Bolette Brygge 1, Tjuvholmen, N-0252 Oslo, Norway

2) Armada Shipping PTE Ltd. 6 Battery Road, Unit No.#17u-05/06 Singapore 049909.

- <u>Parties Against Whom Provisional Relief is Sought.</u> .

1) Eitzen Bulk A/S A company incorporated under the laws of Norway, having its office at Bolette Brygge 1, Tjuvholmen, N-0252 Oslo, Norway

2) Armada Shipping PTE Ltd. 6 Battery Road, Unit No.#17u-05/06 Singapore 049909.

## Items Required by Bankruptcy Code Section 1515

28.    Bankruptcy Code section 1515(b) requires that a petition for recognition of a foreign proceeding be accompanied by certain documents. Accordingly, the following documents are attached hereto, designated as the Exhibits noted below:

Exhibit A – Letter of Reference commencing the SICA Proceeding;

Exhibit B - Board for Industrial and Financial Reconstruction Evidencing existence of the SICA Proceeding;

Exhibit C and D - Copies of the Board of Directors resolutions authorizing commencement of the SICA and foreign proceedings and appointment of the Foreign Representative.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Mumbai, India
          October 3, 2011

Chetan Shah, as Foreign
Representative

**Exhibit A**



**ASHAPURA**
**MINECHEM LIMITED**

O/c.

May 31, 2011

भारत सरकार/GOVT. OF INDIA
औ बि पु बोर्ड/BIFR 2701 (H)
डायरी नं./Dy. No
दिनांक/Date 24.6.11 भी
लिपिक का नाम/No
हस्ताक्षर/Signature

The Registrar,
Board for Industrial & Financial Reconstruction,
Jawahar Vyapar Bhavan, Tolstoy Marg,
NEW DELHI - 110 001

Dear Sir,

Sub. : Reference under Section 15(1) of the Sick Industrial
Companies (Special Provisions) Act, (SICA) 1985

===========================================

We hereby file reference with you in Form A in 6 sets, along with the relevant Annexure (as per list appended herewith).

1. **Compliance with criteria for registration u/s 3(1)(o) of SICA :**

   *Audited*

   On the basis of ~~provisional~~ accounts for the year ended as on 31.03.2011, we have formed opinion regarding the Company became a Sick Industrial Company and meet the laid down criteria in this regard viz.

   i. We are an Industrial Company in existence for more than 5 years and our activities fall under First Schedule to the Industries (Development and Regulation) Act, 1951;

   ii. We have engaged more than 50 employees during the last 12 months;

   iii. Our accumulated losses as on 31.03.2011 have exceeded our entire Net Worth.

2. **Resolution by Company's Board of Directors :**

   Our Board of Directors in the meeting held on 30.05.2011 have formed an opinion that our Company has become sick in terms of Section 3(1)(o) of Sick Industrial Companies (Special Provisions) Act, (SICA) 1985

3. **Industrial License and Factory License :**

   Our Units are registered with Ministry of Industry, Secretariat for Industrial Approvals, Entrepreneurial Assistance Unit, New Delhi. We are also submitting Factory Licenses duly translated into English Language.

Contd.. 2/-



**ASHAPURA**

- 2 -

4. It is submitted that since commencement of Securitization and Reconstruction of Financial Assets and Enforcement of Security Interest Act, 2002, no financial assets of the Company have been acquired by any securitization Company or Reconstruction Company under sub section (1) of section 5 of SARFAESI, Act.

5. We have authorized Mr. B.D. Chhaparwal, proprietor of M/s B.D. Chhaparwal & Company, Chartered Accountants, Mumbai to represent our case before you.

We trust you will find the reference application in order. Please let us know if any other information/ clarification are desired at you end.

Yours faithfully,

FOR ASHAPURA MINECHEM LTD.

CHETAN SHAH
MANAGING DIRECTOR

Encl.: List of Enclosures



**Exhibit B**

# BOARD FOR INDUSTRIAL AND FINANCIAL RECONSTRUCTION

## CASE NO. 34/2011 : M/S ASHAPURA MINICHEM LTD.

### SUMMARY RECORD OF THE PROCEEDINGS OF THE HEARING HELD ON 25.7.2011 BEFORE THE BENCH CONSISTING OF SHRI NIRMAL SINGH, CHAIRMAN AND SHRI Y.K.GAIHA, MEMBER

### BENCH - I

| Present | Name and Designation of the Representative S/Shri/Ms |
|---|---|
| M/s Ashapura Minichem  Ltd. | Rajesh Bohra, Advocate<br>MD Bhatt<br>Ketan Shrimankar<br>Rajiv Gandhi<br>Dilip Gandhi<br>O.P.Gaggar |
| Bank of India (BOI) | Hari K.G., Manager (Law) |
| Axis Bank Ltd. | Girish Vas, DVP |
| DBS | Sujeet Anand, AVP |
| HDFC | S.Khattar, DVP |
| ICICI Bank Ltd. | Sanjay Sharma, Legal manager<br>Vikas Singh, Manager |
| Deutche Bank AG | L.K.Bhushan<br>P.Venugopal<br>Swati Singh Malik |
| Eitzen Bulk –A/s | Did not sign |

1.    Based on its audited balance sheet (ABS) as on 31.3.2011 M/s. Ashapura Minichem Ltd. (AML) filed a reference with BIFR u/s 15(1) of the Sick Industrial Companies (Special Provisions) Act, 1985 (SICA) vide Form `A' received by BIFR on 02.06.2011. The decision to file the reference was taken in the company's Board of Directors' meeting held on 30.5.2011 and AGM (Not furnished). The reference was taken up for consideration so as to determine the status of company's sickness. It was noted from Form `A' and other papers filed by the company that the company was incorporated in the State of Gujarat on 19.02.1982. The company's factory was located

1

at Distt. Kutch, Gujarat. The company had commenced commercial production on 01.01.1982, and was engaged in manufacture of Calsinated Bauxite, Bentonite etc., which was a product listed in the First Schedule of IDR Act, 1951. The factory, which as per Form A, employed 343 workers, was reported to be working. The company's ABS for financial year (FY) ended 31.3.2011 showed its net worth (NW) as Rs. 16562.92 lakh consisting of paid up share capital Rs. 1579.72 lakh and free reserves of Rs. 14983.20 lakh. The entire net worth was claimed to have been fully eroded due to the accumulated losses which stood at Rs. 52036.45 lakh. The company's investment in plant & machinery (P&M) was Rs. 11536.00 lakh.

2.1   In the hearing held to-day (25.7.2011), the representative of Bank of India (BOI) stated that the bank needs three weeks time to file its written submissions on the Form-A regarding its objections on the sickness of the company.

2.2   The representatives of Axis Bank, DBS, HDFC requested for three weeks time to file their written submissions on the Form-A regarding their objections on the sickness of the company.

2.3   The representative of ICICI Bank Ltd. stated that they are not direct creditors of the company.   They have funded the subsidiary company backed by the letter of comfort from the company (AML). The Bench observed that the loan given to the subsidiary company cannot be taken into account for deciding the present reference and ICICI should clarify its legal position regarding the present reference.   ICICI should file its written submissions.   If they are impleaded, only then they will have the right to appear in the hearings of the case in the Board.

2.4   The representative of Deutche Bank AG stated that they also have outstanding dues against the company.   The Bench observed that they should clarify their legal position regarding the present reference and file its written submissions.

2.5   The representative of Eitzen Bulk-A/s stated that it has secured an international arbitration award dt. 26.5.2009 made and published in London, U.K., against the company. The representative further stated that Eitzen had been awarded a sum of Rs. 166.5 crores (appx.) alongwith interest and cost. Eitzen had applied before the Hon'ble High Court of Mumbai for enforcement of the said award under sections 44 to 48 of the Arbitration and Conciliation Act, 1996. The petition No. 561/2009 is pending adjudication before the said Hon'ble High Court. The representative further stated that the company was claiming that its networth would stand eroded after making provision for the award amount which in fact had neither been paid nor even secured in favour of Eitzen by the company. The representative requested that Eitzen may be impleaded in the company's case and given an opportunity to demonstrate against the maintainability of the reference of the company.

2.6   The ld advocate appearing on behalf of the company stated that the foreign award was three times of the dues and they have disputed the award in the Hon'ble High Court of Mumbai. The ld advocate further stated that this award has great adverse impact on the networth of the company and he added that Foreign Court award are not binding when it is accepted in India by a Court.

2.7   The Bench observed that the Board cannot take cognizance of a foreign decree until endorsed by a competent civil court of India and M/s Eitzen should file their written submissions as to whether they are secured creditors or unsecured creditors and justify why they should be impleaded. Accordingly, having considered the submissions made and material on record, the Bench issued the following directions:-

(i)    BOI, DBS, HDFC & Axis bank to file their written submissions on the sickness of the company to the Board with a copy to the company, within a period of 3 weeks.

(ii)   The company may file their rejoinder, if any, on the written submissions of BOI, DBS, HDFC & Axis ibank within further 2 weeks.

3

(iii) ICICI Bank and Deutche Bank to file their written submissions regarding impleadment in the present case.

(iv) M/s Eitzen Bulk-A/s to file their written submissions regarding their impleadment in the present case.

(v) The next hearing of the case will be held on 19.9.2011.

**(Y.K.GAIHA)**
**MEMBER**

**(NIRMAL SINGH)**
**CHAIRMAN**

4

**Exhibit C**



**ASHAPURA**
MINECHEM LIMITED

## ANNEXURE – D

### CERTIFIED TRUE COPY OF THE RESOLUTION PASSED BY THE BOARD OF DIRECTORS OF THE COMPANY AT ITS MEETING HELD ON 30TH MAY, 2011, AT THE REGISTERED OFFICE OF THE COMPANY AT JEEVAN UDYOG BUILDING, 3rd FLOOR, Dr. D. N. ROAD, FORT, MUMBAI – 400001

The Chairman placed before the Board the Audited Balance Sheet of the Company for the year ended 31st March, 2011. The Board of Directors discussed the performance of the Company, which has been deteriorated mainly on account of losses incurred due to claims by Shipping Companies, Government of Gujarat Policy to restrain export of Bauxite etc.

The Chairman further informed the Board that as per the said accounts, the accumulated losses of the Company of Rs. 520.36 crores exceeded the net worth of the Company amounting to Rs. 166.34 crores comprising Paid-up Capital of Rs.15.80 crores, Employee Stock Option outstanding of Rs 0.71 crores and Free Reserves of Rs. 149.83 crores, which has resulted in the total erosion of its entire net worth by Rs. 354.02 crores.

The Chairman further informed the Board that the Board of Directors has sufficient reasons to form an opinion that the Company has prima facie become a Sick Industrial Company within the meaning of section 3(1)(o) of the Sick Industrial Companies (Special Provisions) Act, 1985 and pursuant the proviso to section 15(1) of the Sick Industrial Companies (Special Provisions) Act, 1985, the reference in the prescribed Form A will have to be made with the Board for Industrial and Financial Reconstructions (BIFR) within 60 days from the date on which the Board has formed an opinion that the Company has prima facie become a Sick Industrial Company within the meaning of section 3(1)(o) of the Sick Industrial Companies (Special Provisions) Act, 1985.

In view of this, the Chairman further clarified that the Board will have to consider the said matter and the resolution will have to be passed by the Board of Directors of the Company for making reference to the Hon'ble BIFR based on the audited accounts. The Chairman, therefore, moved the following resolution and the Board considered the said matter and passed the following resolution which was carried unanimously.

"RESOLVED THAT the Board hereby confirms that it has sufficient reasons based on the results revealed by the audited accounts for the year ending 31.03.2011, to form an opinion that the Company has prima facie become a Sick Industrial Company and accordingly, hereby forms an opinion that the meaning of section 3(1)(o) of the Sick Industrial Companies (Special Provisions) Act, 1985, based on the said audited accounts of the Company for the financial year ending 31.03.2011. "

Contd.. 2/-

ASHAPURA

- 2 -

"RESOLVED FURTHER THAT the reference be made to the Board for Industrial and Financial Reconstructions pursuant to the proviso to sub-section (1) of section 15 of the Sick Industrial Companies (Special Provisions) Act, 1985, by the Company as the accumulated losses exceeded the entire net worth as per the provisional accounts for the financial year ending 31.03.2011 and the Company with negative net worth of Rs. 354.02 crores has prima facie become a sick industrial Company within the meaning of section 3(1)(o) of the Act. "

"RESOLVED FINALLY THAT Shri Chetan Shah, Managing Director, Shri Rajiv Gandhi, Chief Financial Officer (CFO), Shri Dilip Gandhi, Sr. VP–Corporate Planning & Projects and Shri Ajay Phalod, GM-Finance be and are hereby authorized individually to file reference, make representation and take necessary action pursuant to the foregoing resolution as also to further delegate and/or authorize any other authorized person/ professional(s) to represent and take necessary action in the best interest, for and on behalf of the Company in this regard.

Certified True Copy,

FOR ASHAPURA MINECHEM LIMITED

CHETAN SHAH
MANAGING DIRECTOR

# Exhibit D



**ASHAPURA**
**MINECHEM LIMITED**

<u>**CERTIFIED TRUE COPY OF THE RESOLUTION PASSED BY THE BOARD OF DIRECTORS OF THE COMPANY AT ITS MEETING HELD ON 2nd AUGUST, 2011, AT THE REGISTERED OFFICE OF THE COMPANY AT JEEVAN UDYOG BLDG., 3RD FLR., D. N. ROAD, FORT, MUMBAI – 400001**</u>

"**RESOLVED THAT** Shri Chetan Shah, Managing Director of the Company be and is hereby designated and appointed as Foreign Representative of the Company (the "Foreign Representative"), as defined under Chapter 15 of the United States Bankruptcy Code ("Chapter 15"), for all purposes contemplated under Chapter 15.

**RESOLVED FURTHER THAT** the Foreign Representative be and is hereby authorized to commence a case under Chapter 15 for and on behalf of the Company and to exercise all such rights and powers that a Foreign Representative may exercise under Chapter 15 and other applicable law."

Certified True Copy

For ASHAPURA MINECHEM LIMITED

NAVNITLAL R. SHAH
EXECUTIVE CHAIRMAN

*Regd. Office :* Jeevan Udyog Building, 3rd Floor, 278, D. N. Road, Fort, Mumbai - 400 001. India
Tel.:+91-22 6665 1700 · Fax:+91-22 2207 9395 / 2207 4452 · E-mail : ashapura@vsnl.com · Website :www.ashapura.com