**BAKER & McKENZIE LLP**

**1114 Avenue of the Americas**
**New York, New York  10036**
**Telephone:  (212) 626-4100**
**Ira A. Reid (IR-0113)**

**Attorneys for the Foreign Representative**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| ASHAPURA MINECHEM LTD., | Case No. 11-14668 (JMP) |
| Debtor in a Foreign Proceeding. | |

## OMNIBUS REPLY OF FOREIGN REPRESENTATIVE TO OBJECTIONS FILED IN OPPOSITION TO *EX PARTE* APPLICATION FOR PROVISIONAL RELIEF PENDING RECOGNITION OF A FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 105(a), 1504, 1515, 1517 AND 1519

Chetan Shah, as the duly appointed foreign representative (the "Foreign Representative") of Ashapura Minechem Ltd. ("Ashapura"), by his undersigned counsel, Baker & McKenzie LLP, respectfully makes this Omnibus Reply to the objections (the "Objections") filed in response to his application (the "Application"), pursuant to sections 105(a) and 1519 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), for entry of an order granting provisional relief pending recognition of Ashapura's financial restructuring in India (the "Indian Proceeding") as a foreign main proceeding pursuant to Bankruptcy Code sections 1515, 1517, 1520 and 1521, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     The Objections are meritless and should be overruled.  The objection filed by Eitzen Bulk A/S ("Eitzen" and, as applicable, the "Eitzen Objection") opposes the granting of provisional relief by attempting to litigate, in this Court, the very same issues that it has brought before the Indian Court in its effort to obtain dismissal of the Indian SICA proceeding.  In so doing, Eitzen completely misapprehends the elements necessary for the obtaining of provisional relief prior to recognition of a chapter 15 case.  As a result, and for the reasons set forth in detail below, Eitzen has failed to raise any genuine or material issue that might challenge Ashapura's likelihood of successfully obtaining an order of recognition from this Court, in accordance with the requirements of sections 1515, 1516 and 1517 of the Bankruptcy Code.  Having failed to adequately attack the likelihood that the Foreign Representative will obtain an order of recognition, as Eitzen is required to do if it wishes to defeat an application for provisional relief under section 1519 of the Bankruptcy Code, its Objection must likewise fail.

2.     Moreover, notwithstanding the Eitzen's misleading statements to the contrary, the Foreign Representative did make a strong case in the Application, repeated in summary fashion below, for the existence of irreparable harm in the event that provisional relief under section 1519 is not granted.  The Eitzen Objection is replete with other materially misleading statements, some of which the Foreign Representative will detail in the body of his argument below.

3.     Eitzen's section 1506 argument is likewise meritless.  Aside from its questionable applicability to Ashapura, the Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010 ("CISADA"), which provides a list of nine sanctions according to the Exhibit D to the Declaration of Michael Unger in Opposition to Application for Preliminary Injunction, does not prohibit access to the U.S. Courts.  Presumably, the United States Congress knew how to

prohibit such access if it wished to do so. In any event, the section 1506 exception to a grant of recognition under section 1517 is extremely narrow and, as discussed below, the applicable standards for applying section 1506 in denying recognition involve public U.S. policy issues that relate to the foreign proceeding and the relief being requested of this Court, rather than activities which, even if true, are completely unrelated to either the Indian proceeding or the relief being requested here.

4.     The objection filed by Armada (Singapore) PTE Limited ("Armada") is likewise meritless. As described below and in the Declaration of AMCOL's Illinois counsel, attached as Exhibit A hereto, were Armada permitted to collect against the surety bond issued in favor of the U.S. District Court in Illinois[1], for the benefit of Armada, or the approximately $687,000 being held by AMCOL on behalf of Ashapura, AMCOL takes the position that any debt that it owes to Ashapura in this amount will have been satisfied, and that there would be no remaining obligation owed to Ashapura. As set forth below, the relief being requested under section 105 of the Bankruptcy Code is broader than the section 362 automatic stay and is crafted to protect Ashapura's U.S. assets, including those currently in the possession of AMCOL, as well as the effect on those assets if Armada were to execute against the bond.

## THE EITZEN OBJECTION

5.     It is well settled that in order to obtain provisional relief under section 1519 of the Bankruptcy Code, a foreign representative must satisfy the standard for obtaining a preliminary injunction. In the context of seeking provisional relief under section 1519 of the bankruptcy Code, however, that standard requires only that the foreign representative establish likelihood of success on the merits in obtaining an order of recognition under section 1517 of the Bankruptcy

---

[1]   The bond actually was issued by Travelers Casualty and obligates Travelers to pay the sum of $2 million to the Clerk of the Court for the U.S. District Court for the Northern District of Illinois. *See* Exhibit B to Armada Objection.

Code (or that there are sufficiently serious questions going to the merits and the balance of hardships favors the foreign representative) and irreparable harm. Because the Foreign Representative will be entitled to relief virtually identical to the provisional relief requested in this motion upon recognition of the Indian Proceeding as a foreign main proceeding, *see* 11 U.S.C. §§ 1520 and 1521, in order to show a likelihood of success on the merits, the Foreign Representative must show that the Court is likely to grant recognition of the Indian Proceeding. *See In re Britannia Bulkers A/S*, Case No. 08-15187 (REG) (Bankr. S.D.N.Y. Jan. 15, 2009).

### A.  Likelihood of Success on the Merits

6.  Section 1517(a) of the Bankruptcy Code provides that a court shall enter an order granting recognition of a foreign proceeding if:

> (i)  such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (ii)  the foreign representative applying for recognition is a person or body; and the Petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

7.  As has been noted in other chapter 15 cases, including Judge Lifland's opinion in *In re Bear Stearns*, these requirements for obtaining recognition are "formulaic"[2] notwithstanding that the Court has discretion to raise relevant issues even in the absence of any claim objections. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) ("[t]he determination is a *formulaic* one.") (emphasis added). As Judge Lifland noted *In re Bear Stearns*, "the process of recognition of a

---

[2]  The Foreign Representative recognizes that bankruptcy courts have considerable discretion in reviewing requests for recognition, even in the absence of any objections from parties in interest, however, the cases in involving non-formulaic issues have most often involved questions concerning COMI (center of main interest) under section 1517(a)(1), an issue which is not a question in this particular case, rather than sections 1517(a)(2) and (3). Even where they have involved sections 1517(a)(2) and (3), those issues have been related to eligibility questions that are directly related to these subsections, and are discussed at length in the Application. Eitzen has not raised any such issues other than in a single unsupported statement in its Objection which it states that the Court need not address.

foreign proceeding is a simple single step process incorporating the definitions in sections 1502 and 101(23) and (24) to determine recognition as either a main or nonmain proceeding or nonrecognition. *See* Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*, 32 BROOK. J. INT'L L. 3, 6 (2007 publication pending) … ("The Model Law grants great discretion as to specific relief, but imposes a fairly rigid procedural structure for recognition of foreign proceedings.")…." *Id.*; *see also In re Fairfield Sentry Limited*, 2011 U.S. Dist. LEXIS 105770 (September 15, 2011)("As the Bankruptcy Court noted, it is undisputed that requirements (2) and (3) [of section 1517] are satisfied as the Petitioners are "persons," and the Petition includes the necessary certifications under section 1515(b) of the Code").

8.      Moreover, Judge Gerber also has noted that "[s]ection 1517 of the Code sets forth the requirements for an order granting recognition, and sets forth a statutory directive that (subject to an exception inapplicable here) when those requirements have been satisfied, a recognition order *shall* be entered." *In re Basis Yield Alpha Fund Master*, 381 B.R. 37, 45 (Bankr. S.D.N.Y. 2008).

9.      Thus, there is no need for this Court to determine at a preliminary injunction hearing, as Eitzen would have the Court believe, or a recognition hearing, whether the Indian foreign proceeding was filed in good faith or whether it should be dismissed under Indian insolvency law, or whether Ashapura is insolvent under Indian law or an industrial company under Indian law, particularly where those issues have already been raised and briefed in the foreign court. *See* Eitzen filings in the Indian proceeding, annexed hereto as Exhibit A. The Court need only determine whether the Foreign Representative is likely to be successful in meeting the requirements of sections 1502 and 1515, which is to say that it has established its center of main interest, that a foreign proceeding exists and a foreign representative duly

appointed, and that all required certifications have been made. As established in the Chapter 15 Petition, all of these requirements for recognition have been satisfied and, to date, none of them have been challenged by Eitzen or anyone else. Thus, Eitzen has not raised any genuine issue whatsoever concerning the recognition requirements set forth in chapter 15, preferring instead to litigate, in a U.S. forum, the merits or lack thereof, of dismissing a foreign proceeding for which it previously has filed papers in the foreign court addressing those very same issues.

10. In addition, there is no practical or equitable reason to speculate whether Eitzen may be successful in having the Indian foreign proceeding dismissed in the future. The Bankruptcy Code provides an adequate remedy for such a contingency. Section 1517(d) of the Bankruptcy Code provides that the granting of recognition (or any other relief under chapter 15) does not prevent modification or termination of recognition if the grounds for granting recognition cease to exist. Thus, if at some date in the future, Eitzen is successful in obtaining dismissal of the SICA proceeding, it could readily seek and obtain dismissal of this chapter 15 case through recission of any recognition order that may be granted.

**B.      Immediate and Irreparable Harm**

11. Notwithstanding Eitzen's misleading statements to the contrary, Ashapura has set forth a strong case for irreparable harm in its Application. As stated more fully in the Application, Ashapura requires immediate protection in the United States from the commencement or continuation of any actions that are or may be commenced against it or its assets by its creditors, including multiple litigations commenced by Eitzen in New York and Illinois which seek the seizure of Ashapura assets, as well as litigation commenced by Armada which threatens the imminent seizure of Ashapura assets if provisional relief is not granted. As stated by AMCOL's counsel in his affidavit annexed as Exhibit B, if the preliminary injunction

is not granted in this case and the Illinois court directs payment, AMCOL will pay Armada the approximately $687,000 which it is currently holding for Ashapura.

12.     Moreover, in New York, Eitzen has obtained attachment and garnishment orders against Ashapura's assets and a judgment against Ashapura in excess of $36 million and, contrary to Eitzen's disingenuous statements that it is merely seeking discovery, it actually is seeking the involuntary transfer to New York of Ashapura's non-U.S. bank deposits for the purpose of satisfying Eitzen's New York judgment. The *Koehler* action against Bank of India in the Southern District of New York, is specifically intended to cause the transfer of Ashapura's non-U.S. based bank deposits to Bank of India's U.S. Branch (because Bank of India's New York Branch does not hold any of Ashapura's assets) so that those funds may be turned over in connection with Eitzen's existing $36 million award and judgment. Thus, Ashapura's assets must be protected from piecemeal dismantling that, if successful, would irretrievably damage Ashapura's ability to restructure in India.

13.     In addition, it is appropriate to note that Eitzen's statements, both by its U.S. counsel and its Indian counsel, that issuance of a preliminary injunction would improperly deprive Eitzen of its right to take discovery is nonsensical and misleading. Assuming that counsel for Eitzen is correct in stating that the SICA proceeding doesn't prohibit Eitzen from taking discovery in India, then they are free to do so notwithstanding any injunction that may be issued in this chapter 15 case. India is, after all, where the assets that Eitzen seeks are located. It is also where the assets about which Eitzen seeks discovery are located. Moreover, Eitzen already has taken discovery from Bank of India in New York and, apparently learned that the information and assets Eitzen seeks is in India rather than New York.

14. If Eitzen is barred by chapter 15 relief being sought, from pursuing its *Koehler* actions in New York to enforce its judgment against Ashapura assets in India (by having a New York court compel the transfer of those assets to New York), it should be similarly barred from using the *Koehler* actions to take discovery with respect to those Indian assets. The place for enforcement and discovery of Indian assets is in India. Moreover, in light of the fact that Eitzen has retained Indian counsel and has appeared before Indian courts in its pursuit of Ashapura, the taking of discovery in India should not pose even the slightest inconvenience to Eitzen. Eitzen, a Danish company, should not be permitted to use the New York courts to reach assets that have no nexis to New York in connection with a contract dispute that also lacks any connection to New York. As a result, the discovery issue raised by Eitzen is nothing more than a red herring.

15. Furthermore, Eitzen's statements and attachment, as Exhibit G to the Michael Under Declaration, of Judge Hellerstein's decision concerning electronic fund transfers, is disingenuous in that Eitzen fails to also disclose the Second Circuit's ruling reversing Judge Hellerstein and vacating the Rule B attachment of electronic fund transfers. In order to complete the record, the Second Circuit ruling is attached hereto as Exhibit C.

16. Finally, contrary to the understanding of Eitzen's counsel, the Foreign Representative is not seeking to undo existing attachments or in any way change the *status quo*. To the contrary, the Foreign representative is seeking to maintain the *status quo* by preventing the seizure of assets and piecemeal dismantling of Ashapura's assets, all of which would result in irreparable harm to Ashapura and its efforts to restructure in India.

C.    **Section 1506**

17. Section 1506 of the Bankruptcy Code provides that the Court may refuse to "take an action governed by this chapter if the action would be manifestly contrary to the public policy

of the United States." 11 U.S.C. §1506. It is to be construed narrowly and invoked only under "exceptional circumstances concerning matters of fundamental importance to the United States. *See In re Fairfield Sentry Ltd*., 2011 U.S. Dist. LEXIS 105770. Thus, a court may refuse to grant recognition under chapter 15 "if it would be **manifestly contrary** to United States **public policy**. *Id*.

18. Regardless of whether CISADA is applicable to Ashapura, which is assumed by Eitzen but by no means established, entry of a preliminary injunction, or a recognition order, in favor of the Foreign Representative, would not be manifestly contrary to United States public policy. Eitzen has presented absolutely no argument that granting recognition in connection with an Indian insolvency proceeding is manifestly contrary to U.S. public policy. Moreover, CISADA itself provides a list of nine sanctions according to the Exhibit D of the Michael Unger Declaration. None of those sanctions prohibits access to the U.S Courts by a party that arguably may have been in violation of the statute. In fact, it is counterintuitive that lack of court access would have been intended, as it presumably would deprive the party accused of violating the statute from having the opportunity to challenge the alleged violation. On the other hand, since CISADA does not bar access to U.S. courts, it is unclear why a grant of relief under chapter 15, wholly unrelated to the acts sanctioned by CISADA, should be precluded

19. In any event, section 1506 was not intended to preclude a foreign representative from obtaining chapter 15 relief for reasons wholly unrelated to the court proceedings in the foreign jurisdiction or in the chapter 15 court. In *In re Qimoda AG,* 433 B.R. 547 (E.D. Va. 2010), the court reasoned that "in deciding whether to apply § 1506, courts have focused on two factors: (i) whether the foreign proceeding was procedurally unfair; and (ii) whether the application of foreign law or the recognition of a foreign main proceeding under Chapter 15

would "severely impinge the value and import" of a U.S. statutory or constitutional right, such that granting comity would "severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes" of these rights." *Id*. at 569; *see In re Metcalfe*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) ("The key determination required by this Court is whether the procedures used in Canada meet our fundamental standards of fairness.").

20.     The *Qimoda* court, citing *In re Metcalfe*, went on to state that "[i]t is also worth noting that courts have, on public policy grounds, also declined to recognize foreign proceedings outside of the Chapter 15 context where, unlike here, the foreign proceeding was conducted within a corrupt or unfair judicial system. *See, e.g., Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139, 141-44 (2d Cir. 2000) (affirming decision that Liberian judgment was unenforceable in the United States because "Liberia's courts did not constitute a system of jurisprudence likely to secure an impartial administration of justice" (citation and internal quotation marks omitted))." *In re Qimoda AG,* 433 B.R. at 569 *n*. 39.

21.     In *In re Basis Yield Alpha Fund Master*, Judge Gerber observed that "Judge Drain noted, in *SPhinX-Bankruptcy, see* 351 B.R. at 115 n. 15, that according to the legislative history, this provision "has been narrowly interpreted on a consistent basis in courts around the world." Judge Gerber went on to emphasize that "the issues before the Court on this motion have nothing whatever to do with the fairness of Cayman Islands law, or the fairness of the Cayman Islands courts". *In re Basis Yield Alpha Fund Master*, 381 B.R. at 45 *n*. 27 (Bankr. S.D.N.Y. 2008). The same applies in the instant case. The issues before this Court have nothing to do with the fairness of Indian law or the fairness of Indian courts. Accordingly, application of section 1506 is not warranted against the Foreign Representative.

## THE ARMADA OBJECTION

22. The Armada Objection likewise should be overruled. Even if Armada were to receive a limited carve-out the permitted it only to seek recovery against the surety bond issued by Travelers, AMCOL has taken the position that the $687,356.52 debt that it owes to Ashapura would be extinguished, and that there would be no remaining obligation owed to Ashapura. *See* AMCOL Declaration at para. 8 (asserting that "after the funds are turned over to Armada pursuant to the August 29 Order, either through payment by the bond insurer or directly by the [AMCOL] Garnishees, the funds cannot be 'subject to any further attachment or restraint'", citing August. 29 Order entered in N.D. Ill. action, at 9). The Foreign Representative should not be placed in the position of having to test that position, or the risk of losing the money if AMCOL is right. While it might be argued that the loss of $687,000 in cash assets would be counterbalanced by an equal reduction in Ashapura's liability to Armada, that argument fails to take into account that, as an unsecured creditor of an insolvent Ashapura, Armada is not likely to receive a 100 cents on the dollar recovery. Armada, as an unsecured creditor, should not be permitted to jump to the head of the line in front of over unsecured creditors.

23. Moreover, Armada's argument that it is a secured creditor, and its reliance on *In re Monroe*, is mistaken. In *In re Monroe*, a case involving an Arizona community property issue where the wife of the judgment debtor filed a chapter 13 petition, the bankruptcy court explored, without deciding, whether a turn over order issued against her non-debtor husband in the U.S. District Court served as a judicial lien over the chapter 13 debtor wife's community property. *See In re Monroe*, 282 B.R.219 (Bankr. D. Arizona 2002)("this Court need not determine whether Gagan's claim is secured or unsecured because the result is the same either way. Classifying the $1,700,000 debt as either secured or unsecured would result in an amount in

excess of the debt limitations of §109(e)….Mrs. Monroe is not eligible for Chapter 13 relief because her debts, which include the debts of the community, exceed the limitations proscribed by §109(e) of the Bankruptcy Code.").  Thus, *In re Monroe* does not stand for the proposition that Armada is a secured creditor of Ashapura by virtue of obtaining a turnover order against AMCOL in a court case where Ashapura has not even appeared.

24.    Moreover, the Application is seeking provisional relief under section 105(a), as well as section 1519 of the Bankruptcy Code.  The authority under section 105, which includes imposition of a preliminary injunction, is broader than the automatic stay provisions of section 362 and may be used to assure the orderly conduct of the reorganization proceeding.  *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 348 (2d Cir. 1985).  Specifically, bankruptcy courts may employ the equitable power granted by section 105(a) to enjoin actions against non-debtor parties when doing so would protect the debtor's estate.  *See In Re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ("It is well settled that bankruptcy courts, under [section 105], may extend the automatic stay to 'enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts.'") (internal citations omitted); *In re Ionosphere Clubs Inc.*, 124 B.R. 635, 642 (S.D.N.Y. 1991) (Section 105(a) "extends to creditor's actions against third parties, when such an injunction is necessary to protect the debtors and the parties in interest to the reorganization in their attempt to reorganize successfully.").  *See, e.g., In re Britannia Bulkers A/S*, No. 08-15187 (REG) (Bankr. S.D.N.Y. Jan. 15, 2009).  Thus, even assuming that the automatic stay would not prevent execution against a surety bond, even in the event that it would adversely effect property of the debtor or its estate, that is precisely what the section 105 stay against execution of the surety bond is designed to do.

## CONCLUSION

Based upon the foregoing, the Foreign Representative respectfully requests that the Court (i) grant the provisional relief requested in the Application; and (ii) grant such other and further relief as is necessary and appropriate.

Dated: New York, New York
October 21, 2011

**BAKER & McKENZIE LLP**

By:     /s/ Ira A. Reid_____

Ira A. Reid (IR-0113)
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 626-4100

Attorneys for Foreign Representative

## Exhibit A

*6*

# BEFORE THE BOARD FOR INDUSTRIAL AND FINANCIAL RECONSTRUCTION AT NEW DELHI

M. A. No. _____/2011
In
Case No. 34 of 2011

In the matter of reference by

ASHAPURA MINECHEM LTD.

And in the matter of an application for
Impleadment by

EITZEN BULK A/S                    .....Applicant

AFFIDAVIT IN SUPPORT OF APPLICATION FOR IMPLEADMENT
UNDER SECTION 13(2) OF THE SICK INDUSTRIAL COMPANIES
SPECIAL PROVISONS ACT, 1985

AFFIDAVIT OF SHRI A. M. KRISHNAN S/O SHRI MAHADEVAN
KRISHNAN AGED ABOUT 78 YEARS AND RESIDENT OF FLAT
NO. 11, PLOT NO. 16, RIFLE RANGE, GHATKOPAR (WEST),
MUMBAI 400 086, MUMBAI.

I the deponent abovenamed solemnly affirm and state as under:-

1.    That I a constituted attorney of the applicant M/s Etizen Bulk A/S.

I know the facts of the case and can depose over the same.

2.    That the accompanying application under section 13(2) of the
SICA has been drafted under my instructions. All statements of facts in

ASH00891



7

the same are true to my knowledge and all the statements of law made

therein are true to my information received and believed to be true.

_Deponent_

Verification

I the deponent abovenamed verify that the contents of the above

para 1 and 2 is correct to my knowledge.   No part of it is false and

nothing material has been concealed therefrom.

Verified so at  Mumbai on this  _15_ th day of July, 2011.

Deponent.

I identified by me
Harsh G. Pratap - Advocate

**BEFORE ME**

**S. K. SHETTY** B.A.LL.M.
ADVOCATE
NOTARY GOVT. OF INDIA
8, "Prakash ", Bestant Street,
Santacruz (W), Mumbai - 400 054.

This document is noted at
Sr. No. ....... Date........in the
Notarial Register





ASH00892

## ANNOUNCEMENT BY ASHAPURA MINECHEM LIMITED

## ON 31ST MAY 2011

The Company is facing three applications for Enforcement of Ex-parte awards in respect of three contracts of affreightments for USD 126,07 million. Till March 2010, the company has shown these claims as contigent liabilities and not acknowledged as debt. Reviewing on the latest developments on lawsuits faced by the company on these contracts and certains pronouncements by the court in the matter, the Board of Directors sought an opinion from the independent legal experts and based on the opinion the company has decided "strictly without prejudice and without admitting the claims of the shipping companies" to make the provision of Rs. 56,202.20 lacs (USD 126,07 million) in current year thereby resulting into negative networth of the company and therefore the Board of Directors have decided to make a reference to the Board for Industrial Financial Reconstruction (BIFR)





## POWER OF ATTORNEY

### Re: Enforcement of Arbitration Award against
### Ashapura Minechem Limited

KNOW ALL MEN BY THESE PRESENTS THAT WE, EITZEN BULK A/S, a company incorporated under the laws of Denmark having its office at Camillo Eitzen House, Amerika Plads 38, 2100 Copenhagen Ø, Denmark, do hereby appoint Mr. A.M. Krishnan, adult Indian inhabitant, residing at Flat No. 11, "Jayadeep", Plot No. 16, Rifle Range, Ghatkopar West, Mumbai – 400 086 and / or Ms. Krystal Fernandes, adult Indian inhabitant, residing at Thomas Kinny, House No. 136 / F, Worli Village, Mumbai 400 030 and / or Mrs. Stepheny D'costa, adult Indian inhabitant, residing at B / 4, Kanchan Apratments, Marol-Maroshi Road, Mumbai 400 059 to be our lawful Attorneys, to jointly and / or severally do all or any of the following acts, deeds and things in India:

1.  To initiate and / or defend legal proceedings on our behalf in the High Court of Judicature at Bombay and all other Courts including all High Courts in India and courts subordinate thereto and the Supreme Court of India and to sign, verify and declare plaint, statement of claim, written statement, caveats, application for arrest and other replies, affidavits, rejoinders, to file petitions including arbitration petitions, suits, counter-claims, applications, appeals, revision applications, reviews, complaints, affidavits and/or other proceedings in any court or other authorities and for these purposes to declare, swear / affirm, plaints, petitions, including arbitration petitions, statement of claim, replies, counter-statements, written statements, rejoinders, affidavits, counter-claims and / or any other proceedings.

**EITZEN BULK A/S**

Camillo Eitzen House, Amerika Plads 38, DK-2100 Copenhagen Ø, Denmark
CVR No. 38 28 37 15 * www.eitzen-group.com
Tel.: +45 3997 0400

**ASH00894**

2. To represent us before the High Court of Judicature at Bombay and all other Courts including all High Courts in India as well as the Supreme Court of India and to give evidence on our behalf and produce documents in any of the aforesaid proceedings.

3. To appoint advocates, solicitors, and counsel, to sign Vakalatnama on our behalf and to discharge them or replace them.

4. To apply to issue summons, receive documents, to compromise, compound or refer to arbitration any of the aforesaid proceedings, to deposit monies in any court or with any authority, to withdraw such monies, to pay court fees, to receive refund thereof, to authorise advocate/s engaged by them, to pay such court fees or to receive such refund, to apply for execution and / or enforcement of decrees, judgments, awards and order passed in our favour, to receive and / or authorise Advocate/s to receive amounts under any decrees, judgments, awards and orders passed in our favour, to apply for inspection of documents / records and to inspect documents / records.

5. To apply for permission from Reserve Bank of India, exchange control department, or such other authorities as may be necessary for remitting to us any amount which may be deposited in court or which our said attorneys may receive on our behalf in India pursuant to any award, decree, judgment or order of any court or arbitrators or authorities.

6. To give all undertakings on our behalf or as required to be given by us or by the rules for obtaining order of arrest and/or any ad interim or interim orders including undertakings to pay damages to the Defendants in the event of wrongful arrest, stay or injunctions being obtained.

EITZEN BULK A/S

ASH00895

7. And generally to do all other lawful acts, deeds and things necessary for the aforesaid purpose or cause them to be done.

AND WE HEREBY confirm that all acts, deeds and things lawfully done or caused to be done by our said attorneys shall be construed as acts, deeds and things done by ourselves and we undertake to ratify all and whatsoever our said attorneys shall lawfully do or cause to be done on our behalf by virtue of these presents.

IN WITNESS WHEREOF we have executed this power of attorney at Copenhagen this 22nd day of June 2009.

For EITZEN BULK A/S

Mr. Per Lange
MANAGING DIRECTOR

Mr. Steen Larsen
DIRECTOR

EITZEN BULK A/S

ASH00896



I, the undersigned, **Johnna Lund** notary public of Frederiksberg, Denmark, hereby certify that

**Mr. Per Lange**

and

**Mr. Steen Larsen**

who have earlier proved their identity by presentation of passport and whose signature is filed in our register of signatures, they have signed this document without being present at the notarial office.

I also certify that they are authorised to sign for the public limited company/ private limited company pursuant to the records of the Danish Commerce and Companies Agency

**EITZEN BULK A/S**

There were no conspicuous amendments or additions in the document other than those signed (initialled) by me.

In witness whereof

**Notary Public of Frederiksberg**, Denmark June 23rd, 2009.



Jóhnna Lund

Notary Public of Frederiksberg

ASH00897

_Speed Post_

To,

M/s Ashapura Mineel...
Jeevan Uday Building,
3rd floor, 278, D. N. Road,
Fort, Mambai- 400 001

If undelivered, please return to :
**GAGGAR & COMPANY, LAW FIRM**
490, Lawyers Chambers Block-II, High Court of Delhi,
New Delhi-110003                Tel. : 23074100



**EMS** SPEED POST
ED 35382542 21N

ASH00898



DelvryPo:DELHI<11686|>

SP
FED3:N:36525:422:TN
Counter No:2,0P-Code:VS
####****#*#****####*######
####*******#***#*######
####*****#***#****####*##*#
Wt:174gr,Rs:26/87/7911 16:85
-fromShipCon- sount-0'GATR   -19T-PTF
DelvryPo:MUMBAI  CPAIRAI<<586686>

ASH00899

# BEFORE THE BOARD FOR INDUSTRIAL AND FINANCIAL RECONSTRUCTION AT NEW DELHI

Case No. 34 of 2011

In the matter of

ASHAPURA MINECHEM LTD. ..........Appellant

### INDEX          N.D.O.H 19.9.2011

| SL. | PARTICULARS | PAGES |
|-----|-------------|-------|
| 1. | Written Submission on behalf of Etizen Bulk A/S Copenhagen, Denmark in opposition to admission of the present reference as per directions dated 25.7.2011 | 1- 5 |
| 2. | Proof of service | 6 |

(O. P. GAGGAR)

Place New Delhi
Dated   13.09.2011

Advocate for the Intervener
490, Lawyer Chamber Block-II
Delhi High Court, New Delhi
Phone No. 23074100, 9810185751

ASH00900

# BEFORE THE BOARD FOR INDUSTRIAL AND FINANCIAL RECONSTRUCTION AT NEW DELHI

### Case No. 34 of 2011

In the matter of reference by

ASHAPURA MINECHEM LTD.

## WRITTEN SUBMISSION ON BEHALF OF ETIZEN BULK A/S COPENHAGEN, DENMARK IN OPPOSITION TO ADMISSION OF THE PRESENT REFERENCE AS PER DIRECTIONS DATED 25.7.2011.

To,

HON'BLE THE CHAIRMAN AND HIS
COMPANION MEMBERS OF THE BOARD FOR
INDUSTRIAL AND FINANCIAL RECONSTRUCTION

MOST RESPECTFULLY SHOWETH:-

1.       These written submissions are being filed on behalf of M/s

ETIZEN BULK A/S, A company incorporated under laws of Denmark

Having its office at Camillo Etizen House, Amerika Plads 38, 2100

Copenhagen, Denmark hereinafter referred to as objector.   The objector

is filing these submissions with the handicap of not having a copy of

reference with him as the provision of a copy was objected to by counsel

for the Company.    The submissions made are on the basis of a

representation made by the company in reference on its website.   The

ASH00901

objector wishes to file better and detailed submissions when he is provided with a copy of the reference.

2. That the objector has secured a international arbitration Award dated 26th May 2009 made and published in London, United Kingdom, against the company under reference. The applicant has been awarded a sum of US$ 36,306,104 and US$74,135 and GBP 90,233.66 (Roughly equivalent to INR 166.5 Crores at present exchange rates) alongwith interest and cost. The applicant has applied before the Hon'ble Bombay High Court for enforcement of the said award under sections 44 to 48 of the Arbitration and Conciliation Act, 1996. Their petition being Arbitration Petition No. 561/2009 is pending adjudication before the said Hon'ble High Court. The applicant has come to know of the present reference because the Company has informed the Hon'ble High Court that they have filed a reference before this Hon'ble Board.

3. That the objector is an unsecured creditor but has a substantial interest in the reference. It is having an arbitral award in its favour which is enforceable in India as per the provisions contained in section 44 to 48 of the Arbitration and Conciliation Act, 1996. The company is disputing liability and has raised a preliminary objection to the enforcement of the award which has been heard by the Bombay High Court on 16th August 2011 and judgment is awaited. It is believed by the

ASH00902

5

In the aforesaid circumstances it is respectfully prayed that the reference may be rejected as not maintainable.

ETIZEN BULK A/S
(Objector)

Through

(A. M. Krishnan)

Constituted Attorney

Through

Place:

(O. P. Gaggar)

Date:

Advocate for the Objector.

ASH00903

*Speed Post*

≡EMS SPEED POST

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
ED 36866500 7 IN

SP To: DELHI Hub
ED36866500 7IN
Counter No:5,OP-Code:OP
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
Amount:Rs12.00
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
Wt:35grams,13/09/2011 10:46
From:JANPATH <110001>
DelvryPo:DELHI<110076>

Rayesh Borat,
G-231, Sarito
New Delhi
Ph. 98103

Recd
17/9/2011
11.40 m

If undelivered, please return to :
**GAGGAR & COMPANY, LAW FIRM**
490, Lawyers Chambers Block-II, High Court of Delhi,
New Delhi-110003          Tel. : 23074100

ASH00904

**<u>Exhibit B</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x

In re:                                                  Chapter 15

ASHAPURA MINECHEM LTD.                    Case No.: 11-14668 (JMP)

Debtor in a Foreign Proceeding.
------------------------------------------------------------- x

## DECLARATION OF JOHN F. KLOECKER

I, John F. Kloecker, declare upon personal knowledge, the following:

1.     I serve as counsel to AMCOL International Corporation, American Colloid

Company, and Volclay International Corporation (collectively, "Garnishees") in the

Supplemental Rule B proceeding initiated by Armada (Singapore) PTE Limited ("Armada")

against Ashapura Minechem Limited ("Ashapura"), captioned *Armada (Singapore) PTE Limited*

*v. Ashapura Minechem Limited*, No. 10 C 5509 (N.D. Ill.) (the "Armada Action").

2.     On September 28, 2010, the Garnishees posted a $2,000,000 bond as substitute

security for any amounts determined to be owed by Garnishees to Ashapura in the Armada

Action.

3.     On August 29, 2011, following an evidentiary hearing, the Court in the Armada

Action ruled that Garnishees owed $687,356.52 to Ashapura, and directed that this amount be

turned over to Armada (the "August 29 Order") (Docket 62 in Armada Action).

4.     The August 29 Order provides in relevant part:

> I direct that the property to be turned over by the AMCOL Garnishees to the
> plaintiff's attorneys shall not be subject to any further attachment or restraint.
> Upon turnover by the AMCOL Garnishees to plaintiff's attorneys, Bond Number
> 105483459, dated September 17, 2010, shall be cancelled.  (August 29 Order at
> 9.)

5.     The enforcement of the August 29 Order has been stayed pending resolution of the motion of Eitzen Bulk A/S ("Eitzen") to intervene in the Armada Action and to clarify or amend the August 29 Order (Docket 73 in Armada Action).

6.     The August 29 Order directs the Garnishees to "turn over $687,356.52" to Armada, at which point the bond posted by Garnishees will be cancelled.  (August 29 Order at 9.)  If this Court does not enter the preliminary injunction and the Armada Action is allowed to proceed, Garnishees intend to comply with Judge Bucklo's direction in the August 29 Order to turn over $687,356.52 to Armada from the funds in its possession subject to any further orders or direction from Judge Bucklo.  The August 29 Order does not direct or purport to allow payment of the turnover amount from the bond, and Garnishees do not intend to satisfy the August 29 Order from the bond unless so ordered by the Court.

7.     In the event that Garnishees are required to pay $687,356.52 to Armada in satisfaction of the August 29 Order during the pendency of the instant Chapter 15 proceedings – whether this amount is paid from funds currently held by Garnishees or paid from the bond that has been posted in the Armada Action – it is the Garnishees' position that any debt owing from Garnishees to Ashapura in this amount will have been satisfied, and that there will be no remaining obligation to Ashapura.

8.     Garnishees should not be forced to satisfy the same debt twice, *i.e.*, once to Armada as a creditor of Ashapura through the bond approved as part of the Armada Action, and again to the other creditors of Ashapura through the bankruptcy proceeding.  It is the Garnishees' position that after the funds are turned over to Armada pursuant to the August 29 Order, either through payment by the bond insurer or directly by the Garnishees, the funds cannot be "subject to any further attachment or restraint." (*See* August 29 Order at 9.)

9. Under penalties as provided by law pursuant to 28 U.S.C. §1746, I declare that the foregoing statements of fact are true and correct to the best of my knowledge and belief.

Dated: October 20, 2011
Chicago, IL

_____
JOHN F. KLOECKER

## Exhibit C

10-0976-cv
Eitzen Bulk A/S v. Ashapura Minechem, Ltd.

1          UNITED STATES COURT OF APPEALS

2             FOR THE SECOND CIRCUIT

3              August Term, 2010

4   (Argued: January 26, 2011      Decided: February 15, 2011)

5              Docket No.  10-0976-cv

6   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

7   EITZEN BULK A/S,
8
9        Plaintiff-Appellee,
10
11  ABC,
12
13       Plaintiff,
14
15            v.
16
17  ASHAPURA MINECHEM, LTD.,
18
19       Defendant-Appellant,
20
21  DEF, ASHAPURA GROUP OF INDUSTRIES, ASHAPURA SHIPPING LIMITED,
22  ASHAPURA INTERNATIONAL LIMITED, BOMBAY MINERALS LTD., ASHAPURA
23  CLAYTECH LTD., ASHAPURA ALUMINUM LTD., EAGLE FUEL PVT. LTD.,
24  PRASHANSHA CERAMICS LTD., PENINSULA PROPERTY DEVELOPERS PRIVATE
25  LTD., SHARDA CONSULTANCY PRIVATE LTD., ASHAPURA CONSULTANCY
26  SERVICE PRIVATE LTD., ASHAPURA MINECHEM UAE (FZE), ASHAPURA
27  HOLDINGS UAE (FZE), ASHAPURA MARITIME FZE, ASHAPURA SHIPPING
28  (UAE) FZE, ASHAPURA SHIPPING UAE, ASHAPURA FINANCE LTD., ASHAPURA
29  INFIN PVT LTD., ASHA PRESTIGE CO., ASHAPURA VOLCLAY LTD.,
30  ASHAPURA VOLCLAY CHEMICALS PRIVATE LTD., ASHAPURA AL-ZAWAWI
31  MINERALS, LLC, SHANTILAL MULTIPORT INFRASTRUCTURE PRIVATE LTD.,
32  ASHAPURA ARCADIA LOGISTIC PRIVATE LIMITED, ASHAPURA CHINA,
33  ASHAPURA CHINA CLAY COMPANY, MANICO MINERALS INTERNATIONAL,
34  ASHAPURA AMCOL.,
35
36       Defendants.
37
38  - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
39
40

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB. 15, 2011

CERTIFIED COPY ISSUED ON 02/15/2011

1  B e f o r e:  WINTER, SACK, and LIVINGSTON, <u>Circuit Judges</u>.
2

3      Appeal from an order of the United States District Court for
4  the Southern District of New York (Alvin K. Hellerstein, <u>Judge</u>)
5  denying a defendant-appellant's motion to vacate maritime
6  attachments of electronic fund transfers entered prior to our
7  decision in <u>Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte</u>
8  <u>Ltd.</u>, 585 F.3d 58 (2d Cir. 2009).  Plaintiff's claim was reduced
9  to final judgment pre-<u>Jaldhi</u> but has not yet been executed
10  against the attached funds, which were retained by the banks in
11  suspense accounts pursuant to the Rule B attachments.  We hold
12  that the entry of a judgment upholding plaintiff's claim as to
13  liability does not affect the retroactive applicability of <u>Jaldhi</u>
14  where that judgment has not yet been executed against the
15  attached property.  Accordingly, we vacate the decision and
16  remand with instructions to release the property.

17
18                          CHARLES BART CUMMINGS, Baker &
19                          McKenzie LLP, New York, New York,
20                          <u>for</u> <u>Defendant-Appellant</u>.
21
22                          MICHAEL E. UNGER (Lawrence J. Kahn,
23                          Eric J. Matheson, <u>on the brief</u>),
24                          Freehill Hogan & Mahar LLP, New
25                          York, New York, <u>for</u> <u>Plaintiff-</u>
26                          <u>Appellee</u>.
27
28  WINTER, Circuit Judge:

29      Ashapura Minechem, Ltd., appeals from Judge Hellerstein's
30  order denying its motion to vacate maritime attachments of
31  electronic fund transfers ("EFTs") entered pursuant to Rule B

of the Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions ("Rule B"). Fed. R. Civ. P. Supp. R.
B. We have previously held that EFTs are not properly
attachable under Rule B, <u>Shipping Corp. of India Ltd. v. Jaldhi
Overseas Pte Ltd.</u>, 585 F.3d 58 (2d Cir. 2009), and that <u>Jaldhi</u>
applies retroactively "to all cases open on direct review."
<u>Hawknet, Ltd. v. Overseas Shipping Agencies</u>, 590 F.3d 87, 91
(2d Cir. 2009). We now hold that EFTs attached pre-<u>Jaldhi</u> must
be released where the plaintiff obtained a final judgment but
has not executed it against the attached funds that are being
retained by banks in suspense accounts pursuant to Rule B
attachments.

Accordingly, we vacate and remand with instructions to
release the attached property.

BACKGROUND

The underlying dispute does not concern us. It suffices
to say that, in September 2008, Eitzen, the plaintiff, obtained
a Rule B attachment of EFTs of which Ashapura, the defendant,
was an originator or beneficiary. By early 2009, Eitzen had
attached over $1.7 million in EFTs, which the garnishee banks
transferred into suspense accounts. Eitzen ultimately obtained
an arbitration award in London of approximately $36.6 million,
which it moved to confirm in the Southern District. On July
24, 2009, before our decision in <u>Jaldhi</u>, the district court
entered judgment for the full amount of the arbitration award

1    and ordered the garnishee banks to turn the restrained property

2    over to Eitzen within ten days after entry of the judgment.

3    Ashapura did not appeal.  Eitzen's collection efforts were

4    stalled when other creditors of Ashapura asserted their own

5    claims against the funds in the suspense accounts.  By March

6    24, 2010, however, those creditors' claims were all either

7    voluntarily withdrawn or determined against them, leaving only

8    Eitzen's attachment in effect.

9         On November 9, 2009, Ashapura filed a motion to vacate the

10   Rule B attachment pursuant to Jaldhi.  The district court

11   denied the motion.  Noting that this case "involve[d] actual

12   funds, held in suspense accounts, not EFTs," and that, under

13   Jaldhi and Hawknet, it "lacked jurisdiction to order the funds

14   attached," the court stated that "they nevertheless were

15   attached and plainly [the court has] jurisdiction to order

16   their disposition."  It held that neither Jaldhi nor Hawknet

17   "confronted issues arising from an evasive judgment debtor or

18   multiple claims of creditors, including a judgment creditor."

19   The court then upheld the attachment as an exercise of its

20   equity powers.  Ashapura brought the present appeal.

21                              DISCUSSION

22        Eitzen argues that this case is not governed by Jaldhi and

23   Hawknet because the district court's judgment and turnover

24   order below caused the attachment to "merge" into the final

25   judgment prior to the filing of those opinions.  Eitzen further

                                   4

1   contends that Hawknet's retroactive application of Jaldhi does

2   not apply here because the case is no longer "open on direct

3   review," Hawknet, 590 F.3d at 91, given Ashapura's failure to

4   appeal.  We find both arguments unpersuasive.

5       The attachment of EFTs between Ashapura and third parties

6   was invalid under the rule announced in Jaldhi, 585 F.3d at 71.

7   Because the judgment against Ashapura was not executed against

8   the funds, its finality did nothing to alter the legal basis of

9   the banks' retention of the funds in the suspense accounts.

10  See Scanscot Shipping Servs. GmbH v. Metales Tracomex LTDA, 617

11  F.3d 679, 682 (2d Cir. 2010) ("The new suspense account neither

12  cures the jurisdictional defect nor provides a basis for

13  reattachment of the same funds.").

14      Although the question of Ashapura's liability may no

15  longer be "open on direct review," Hawknet, 590 F.3d at 91, the

16  funds remaining in suspense accounts were being retained by the

17  banks solely on the basis of the Rule B attachment and that

18  retention was therefore open to review on a Rule E(4)(f)

19  motion.[1]  The reduction of Eitzen's claim to judgment

---

[1]At oral argument, a question arose as to the existence of tension
between Jaldhi's holding that EFTs "are not the property of either the
originator or the beneficiary," 585 F.3d at 71, and Supplemental Rule E(4)(f),
pursuant to which the present motion was brought.  Rule E(4)(f) states that
"any person claiming an interest in [the attached property] shall be entitled
to a prompt hearing at which the plaintiff shall be required to show why the
. . . attachment should not be vacated . . . ."  Fed. R. Civ. P. Supp. R.
E(4)(f).  While Jaldhi and Hawknet state that at the time of attachment, the
funds are not property of either the originator or the beneficiary for
purposes of Rule B, each has an interest in the funds because the attachment
affects the legal relations between them.  Moreover, preventing a party such
as Ashapura from moving to vacate an illegal attachment would lead to a ruling

1    eliminated all doubt as to Ashapura's liability, but neither

2    Jaldhi nor Hawknet turned on the strength of the merits of the

3    underlying actions brought by the attaching parties.  And so

4    far as the equities between the parties favoring Eitzen are

5    concerned, we have specifically forbidden resort to equitable

6    considerations in addressing motions to vacate pre-Jaldhi

7    attachment orders.  See Sinoying Logistics Pte Ltd. v. Yi Da

8    Xin Trading Corp., 619 F.3d 207, 214 (2d Cir. 2010) ("[F]ar

9    from encouraging district courts to apply Jaldhi selectively

10   based on an examination of the equitable considerations in the

11   remaining EFT-attachment cases, Hawknet requires district

12   courts to vacate any attachment orders granted before [the]

13   decision in Jaldhi insofar as those orders are now inconsistent

14   with Jaldhi.").  We consequently hold that the district court

15   was obligated, pursuant to Jaldhi and Hawknet, to vacate the

16   attachment order.[2]

---

that while the district court has power to order an illegal attachment, it has
no power to vacate it -- a result that cannot be intended by Rule E(4)(f).
Finally, Hawknet itself involved a Rule E(4)(f) motion.  See Hawknet, 590 F.3d
at 90, 93 (relying on Jaldhi to affirm district court's vacatur of attached
EFTs under Rule E(4)(f)).

[2]We note that this resolution is consistent with both the Federal Rules
of Civil Procedure and New York law, although we rely on neither.  Under the
latter, it would appear that attachments may be vacated at any time before
property or debts are actually applied to the satisfaction of a judgment:
"Prior to the application of property or debt by a sheriff or receiver to the
satisfaction of a judgment, any interested person may commence a special
proceeding against the judgment creditor or other person with whom a dispute
exists to determine rights in the property or debt."  N.Y.C.P.L.R. 5239.  This
state procedural rule is operable in an execution of a federal money-judgment
based on Federal Rule of Civil Procedure 69(a)(1), which provides that "[t]he
procedure on execution -- and in proceedings supplementary to and in aid of
judgment or execution -- must accord with the procedure of the state where the
court is located, but a federal statute governs to the extent it applies."

1                                CONCLUSION

2          For the foregoing reasons, we vacate the district court's

3    order denying Ashapura's motion to vacate the Rule B attachment

4    and remand with instructions to release those funds.

5

6

7

8

9

10

11

---

Fed. R. Civ. P. 69(a)(1); <u>see</u> Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u>
§ 21-16 (4th ed. 2010) ("Execution, postjudgment garnishment, and other
supplementary proceedings [related to maritime attachment] are available in
accordance with the practice and procedure of the state in which the federal
district court is located." (citing Fed. R. Civ. P. 69(a))).

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

7

NYCDMS/1200803.1