NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| ASHAPURA MINECHEM LTD., | Case No. 11-14668 (JMP) |
| Debtor in a Foreign Proceeding. | |

## BENCH DECISION GRANTING PETITION FOR RECOGNITION OF FOREIGN PROCEEDING[1]

APPEARANCES:

BAKER & MCKENZIE
*Attorneys for Foreign Representative Ashapura Minechem Ltd.*
1114 Avenue of the Americas
New York NY 10036
By:   Ira A. Reid (argued)
      Kathryn M. Ryan

EATON & VAN WINKLE LLP
*Attorneys for Respondent Armada (Singapore) Pte Limited*
3 Park Avenue
New York, NY 10016-2078
By:   Robert K. Gross (argued)
      Edward W. Floyd

FREEHILL HOGAN & MAHER, LLP
*Attorneys for Respondent Eitzen Bulk A/S*
80 Pine Street
New York, NY 10005
By:   Michael E. Unger (argued)
      Lawrence J. Kahn

---

[1] This is a slightly revised version of a bench ruling that was read into the record at a hearing held on November 21, 2011 – one business day following an evidentiary hearing that took place on November 18, 2011. This memorandum decision constitutes findings of fact and conclusions of law with respect to this contested Petition for Recognition. The Court has expedited its ruling on the petition in order to comply with the directive contained in Section 1517 of the Bankruptcy Code which provides that "a petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time." 11 U.S.C. § 1517(c).

JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The chapter 15 petition filed on October 4, 2011 by Chetan Shah ("Mr. Shah") in his capacity as foreign representative seeks recognition as a foreign main proceeding of an insolvency proceeding voluntarily commenced in India on May 31, 2011 by Ashapora Minechem Ltd. ("Ashapura"). Ashapura is a mining and industrial business headquartered in Mumbai, India. It is a public company whose shares are listed on the Bombay Stock Exchange. Mr. Shah is managing director of Ashapura, one of the company's most influential shareholders and an individual who has personally guaranteed obligations owed by Ashapura to its lenders. Mr. Shah has an undisguised personal economic motivation to protect his investment and personal exposure although it is not clear at this early stage of Ashapura's chapter 15 case whether that motivation may also conflict with his responsibilities as foreign representative.

The proceeding in India is pending before the Board for Industrial and Financial Reconstruction (the "BIFR"), an agency authorized to function as an administrative tribunal under the Sick Industrial Companies (Special Provisions) Act, 1985 ("SICA"). There is no dispute that if this Court were to grant the petition for recognition it would be appropriate for Ashapura's proceeding under SICA (the "SICA Proceeding") to be recognized as a foreign main proceeding within the meaning of Section 1502(4) of the Bankruptcy Code. Ashapura is incorporated under the Indian Companies Act, its principal assets are in India, and it has its registered office in Mumbai. *See* 11 U.SC. § 1516(c). That India is the center of main interest for Ashapura is one of the few issues relating to recognition that is not in controversy.

The version of the SICA statute currently applicable to this SICA Proceeding has been repealed, but implementing legislation for a new and improved statute to replace it has not yet

been formally enacted.  The unusual procedural posture presented is of a foreign insolvency case that is being administered in its home jurisdiction under the authority of an insolvency regime that appears to have been rejected by the Indian legislature as fundamentally flawed and inadequate but that is still functioning for the time being as a residual and apparently legitimate means, but not the only means, to obtain relief for companies like Ashapura that are in financial distress.

The anomaly here is that the foreign insolvency law applicable to this case is suspect and has been openly criticized as deficient and subject to abuse by thoughtful observers of Indian commercial law.  These criticisms have led to repeal of the very same statute that governs Ashapura's SICA Proceeding.  This largely discredited law will continue in force until the Indian legislature takes the necessary action to formally enable the new version of SICA to become effective.  The reason for the delay in implementing the new law has not been adequately explained and is a curiosity that adds uncertainty to the current proceeding.  Despite that uncertainty, there is no doubt that the SICA law in its original form is still being followed in India and, on its face, constitutes a law that relates to insolvency or adjustment of debt within the meaning of Section 101(23).

Mr. Shah's petition has been controverted vigorously by two of Ashapura's largest creditors, Armada (Singapore) Pte Limited ("Armada") and Eitzen Bulk A/S ("Eitzen") (collectively the "Objectors").  The Objectors have questioned Mr. Shah's motives, alleged conflict of interest and lack of good faith and have asserted that SICA does not satisfy the definition of a foreign proceeding in Section 101(23) as "a collective judicial or administrative proceeding…." 11 U.S.C. § 101(23).  Armada also argues that the affairs of Ashapura are not subject to control or supervision within the meaning of that section.

3

Armada and Eitzen are shipping companies engaged in the international shipment of cargo. The Objectors are based respectively in Singapore and Denmark.  Each has obtained judgments against Ashapora arising out of separate arbitration awards that were entered in their favor against Ashapura in London.  The arbitrations sought substantial damages resulting from alleged breaches by Ashapura of certain maritime contracts relating to shipments of bauxite from India to foreign ports.  For reasons that have been neither fully developed nor explained on the current record, Ashapora made the decision not to defend these arbitrations on grounds that the contracts should be treated as void under the doctrine of force majeure.  Regardless of the merits of that legal position, Ashapura's conscious choice to ignore the arbitrations and not to defend them has proven to be a strategic error of colossal proportions.

The consequences of ignoring the arbitrations have been disastrous.  The foreign debtor is exposed to judgments that together total more than $100 million and is involved in an ongoing fight with the Objectors in multiple tribunals, all in an effort to avoid the consequences of its own failure to deal with the arbitrations in a commercially reasonable manner or to engage the Objectors in good faith negotiations to resolve issues arising out of the underlying maritime contracts.  Whether this results from arrogance, ignorance or simply a lack of good judgment on the part of Mr. Shah and his advisors is not clear.  What does seem clear is that Ashapura unwisely adopted arbitration strategies that have resulted in massive judgments against the company that threaten its viability, and it now finds itself in the midst of a terribly nasty cross border fight for strategic advantage and ultimately for its own corporate survival.

The arbitration awards were converted into judgments against Ashapura in the United States and the Objectors are in the process of doing everything in their power to locate assets and collect on these judgments.  For its part, Ashapora is trying hard to escape its obligations under these judgments that it belatedly asserts are substantially overstated in amount due to the failure

of the arbitration awards to reflect appropriate reductions based on the alleged obligation to mitigate damages. For purposes of the contested petition for recognition, the Court does not address the ability of Ashapura to now challenge the quantum of these judgments in the SICA Proceeding. Suffice it to say that the Objectors assert that the current chapter 15 case is the latest example of Ashapura's coordinated efforts to frustrate their rights as judgment creditors and is another indication that Mr. Shah and Ashapura are not acting in good faith.

An order recognizing a foreign proceeding shall be entered if the proceeding is a foreign main or nonmain proceeding, the foreign representative is a person or body and the petition meets the requirements of Section 1515 concerning the petition and accompanying documents. The test does not call for the exercise of much discretion by the bankruptcy court. However, the decision to grant recognition is expressly subject to Section 1506, the public policy exception. This section provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

Therefore, the questions to be decided are: (1) whether Mr. Shah's petition satisfies the statutory standards for recognition under chapter 15; and (2) whether the Objectors have established that recognition should not be granted on grounds that to do so would be manifestly contrary to the public policy of the United States.

The evidentiary record of the hearing held on November 18, 2011 primarily consists of the testimony of an Indian attorney at law named Mayur Bhatt who traveled to New York to testify on behalf of the foreign debtor and various exhibits offered by the foreign debtor and the Objectors. Mr. Bhatt has experience in handling SICA cases before the BIFR and is counsel for Ashapura in the SICA Proceeding. Mr. Bhatt acknowledged that the SICA statute does not by its literal terms provide a formal mechanism for participation by unsecured creditors, but he did

5

note that in practice unsecured creditors were given a voice, in the discretion of the BIFR, could receive distributions under an arrangement with creditors and had the ability to appeal adverse determinations made by the BIFR and to have their appeals heard within the Indian judicial system. Although the appellate process admittedly is time consuming, the availability of appellate review and the ability of creditors to participate before the BIFR demonstrate that systemically SICA functions as a collective process that allows for creditor participation. Furthermore, Ashapora offered exhibit "Debtor 2", a written summary of proceedings held before the BIFR on July 25, 2011. This exhibit lists the names of creditors, including Eitzen, that attended the hearing held on that date and supports the testimony of Mr. Bhatt concerning the participation of unsecured creditors in SICA cases. The fact that unsecured creditors are not as involved as they would be in a chapter 11 case in the United States does not mean that the SICA proceeding in India is not a collective administrative proceeding as defined in Section 101(23).

A proceeding is collective in nature pursuant to 11 U.S.C. § 101(23) if it "considers the rights and obligations of all creditors." *In re Betacorp* Ltd., 400 B.R. 266, 281 (Bankr. D. Nev. 2009)*; see also In re Gold & Honey, Ltd.*, 410 B.R. 357, 369 (Bankr. E.D.N.Y. 2009). Such a collective proceeding "is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Betacorp*, 400 B.R. at 281. "The word 'collective' contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action." *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010). While notice to creditors, including unsecured creditors, may play a role in the court's analysis of whether a proceeding is collective, in determining whether a particular proceeding is collective, "it is appropriate to consider both the law governing the foreign action and the parameters of the

particular proceeding …." *Id*. at 902 (finding that a foreign proceeding alleged to be for the sole benefit of a single class of creditors was a collective proceeding, despite no notice to general unsecured creditors of the appointment of the judicial manager or of actions brought before the court, where all policyholders and creditors would receive notice at the winding up phase and the relevant foreign law allowed parties, including creditors, to be heard in the judicial management process); *see also In re ABC Learning Centres Ltd.*, Case No. 10-11711, 2010 Bankr. LEXIS 4091, *20-23 (Bankr. D. Del. Nov. 16, 2010) (finding unpersuasive objection of party that Australian proceeding was not collective in nature because U.S. creditors did not have adequate notice where notice was proper under Australian law, party had actual notice of the second secured creditor's meeting and the ability to seek redress from the Australian court).

The Court's finding that the SICA proceeding is collective in nature is consistent with this case authority and with the position expressed by the United Nations Commission on International Trade Law – UNCITRAL. "The notion of a 'collective' insolvency proceeding is based on the ability of a single insolvency representative to control the realization of assets for the purposes of pro rata distribution among all creditors (subject to domestic statutory priorities), as opposed to a proceeding designed to assist a particular creditor to obtain payment or a process designed for some purpose other than to address the insolvency of the debtor." U.N. Comm'n on Int'l Law, The UNCITRAL Model Law on Cross-Border Insolvency: the judicial perspective [pre-release] (July 2011) at 19, http://www.uncitral.org/pdf/english/texts/insolven/pre-judicial-perspective.pdf.

The Objectors called no witnesses, although they did cross examine Mr. Bhatt and did offer various exhibits into evidence that were downloaded from various internet sites. These documents appear calculated to emphasize the repeal of the SICA statute and highlight various criticisms of the law, but these exhibits failed to show that the process itself was not collective.

More importantly, none of the evidence offered by the Objectors succeeded in proving the key point in dispute – namely that it would be manifestly contrary to the public policy of the United States to recognize the petition. Counsel for Armada acknowledged during his argument that the Objectors had the burden of proof on this issue. The Court finds that they failed to carry their burden. As a result, the public policy exception does not apply as a basis to refuse the grant of an otherwise appropriate petition for recognition.

Chapter 15 promotes predictability and reliability "by establishing a simple, objective eligibility requirement for recognition...." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008). While "recognition under Section 1517 is not to be rubber stamped by the courts … the process of recognition of a foreign proceeding is a simple single step process incorporating the definitions in Sections 1502 and 101(23) and (24) to determine recognition as either a main or nonmain proceeding or nonrecognition." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) (citations omitted).

This Court must make an independent determination as to whether the SICA proceeding meets the definitional requirements of Sections 1502 and 1517 of the Bankruptcy Code, but "the determination is a formulaic one." *Id.*; *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (explaining that recognition "turns on the strict application of objective criteria" (citing 11 U.S.C. § 1517)) (additional citation omitted), *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (citations omitted) (noting that "recognition of [a] foreign proceeding turns on the objective criteria under §1517 …"), *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (citations omitted) (same), *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 45 (Bankr. S.D.N.Y. 2008) (explaining that §1517 "sets forth the requirements for an order

8

granting recognition, and sets forth a statutory directive that … when those requirements have been satisfied, a recognition order *shall* be entered").

Here the petition for recognition appears designed to obtain the benefits of the automatic stay that comes into effect upon recognition. *See* 11 U.S.C. 1520(a)(1). The evident purpose is to stay the Objectors from taking any further steps to enforce their judgments in the United States to the potential detriment of Ashapora. This has been an objective of the foreign representative from the outset of the case when he first sought a temporary restraining order against the Objectors. The Court issued a TRO and scheduled a hearing for October 17, 2011 on the request for a preliminary injunction and entered a further Order continuing the hearing to October 24, 2011. The motion for a Preliminary Injunction was denied due to a failure of proof without prejudice to Ashapura's right to seek injunctive relief at some future time. No such motion was ever filed. In the interim and in the absence of any stay (and to the apparent dismay of Eitzen), Armada succeeded in obtaining approximately $687,356 from a garnishee in Illinois. In the case of Armada, the automatic stay is being imposed under Section 1520(a)(1) too late to preserve the status quo at least as to that asset.

As for Eitzen, it continues to pursue remedies against Bank of India as part of its ongoing efforts to collect on its judgment against Ashapora. The automatic stay, upon recognition, will apply to those efforts.

Based on the record of the recognition hearing that took place on November 18, the Court grants the petition but does so with the admonition that periodic status conferences shall be held, approximately once every 60 days, regarding the progress of the SICA Proceeding and without prejudice to the rights of the Objectors or other affected creditors to show that the SICA Proceeding, in actual practice, are prejudicing the rights of the Objectors and of other unsecured creditors similarly situated to the Objectors.

The Court reserves the right under Section 1517(d) to grant relief from the automatic stay to the Objectors for cause shown or to take other appropriate action, including modification or termination of recognition, in the interests of justice. The Court also strongly encourages the parties to stop posturing and to start talking to each other in a manner that may lead to a compromise of the Objectors' claims. The Court notes that both sides have a great deal to gain by meeting and conferring, perhaps with a mediator, in an effort to bring these long simmering disputes to a mutually acceptable resolution.

Dated: New York, New York
       November 22, 2011

                                            *s/ James M. Peck*
                                            Honorable James M. Peck
                                            United States Bankruptcy Judge