EATON & VAN WINKLE LLP
3 Park Ave., 16th Fl.
New York, NY 10016
(212) 779-9910 (tel.)
(212) 779-9928 (fax)
Alan Van Praag
Robert K. Gross
Edward W. Floyd

*Attorneys for Objecting Creditor*
*Armada (Singapore) PTE Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

**ASHAPURA MINECHEM LTD**

Debtor in a Foreign Proceeding.

---

Hearing Date: August 21, 2012
Time: 10:00 am

Opposition Due:
August 14, 2012
Time: 4:00 pm

Chapter 15
Case No.: 11-14668 (JMP)

**ARMADA (SINGAPORE) PTE LIMITED'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE JOINT MOTION TO TERMINATE CHAPTER 15 RECOGNITION AND TO DISMISS THE CHAPTER 15 CASE OR, IN THE ALTERNATIVE, FOR PROVISIONAL RELIEF PURSUANT TO 11 U.S.C. § 1522(b)**

1.  Armada (Singapore) PTE Limited ("Armada") by its attorneys, Eaton & Van Winkle LLP, submits this Reply Memorandum of Law in Further Support of the Joint Motion made by Armada and Eitzen Bulk A/S ("Eitzen") (collectively, the "Movants") which seeks: (a) pursuant to 11 U.S.C. § 1517(d), to terminate Chapter 15 recognition and to dismiss the Chapter 15 case; or, (b) in the alternative, for provisional relief pursuant to 11 U.S.C. § 1522(b) (the "Joint Motion," Docket No. 58).

1

2.      On August 14, 2012, Baker & McKenzie LLP ("Baker"), as counsel to Chetan Shah (the "Foreign Representative" or "Shah"), filed a Response Memorandum (the "Response Memorandum") with respect to the Joint Motion.

**Is the Response by the Foreign Representative Himself, or by Counsel Only?**

3.      Notwithstanding Baker's recent submission, it is unclear whether the Foreign Representative, Chetan Shah himself, objects to the relief sought by the Joint Motion, or whether Baker is filing the objection on its own as a self-protective measure.

4.      There is good reason to believe that the latter is the case. When Baker submitted opposition to the last motion in this case, Baker expressly noted that the Foreign Representative had not instructed or authorized them to do so. (Preliminary Opposition to Eitzen's Adjourned Bond Motion, Docket No. 54, at 2 n.1)

5.      In connection with that motion practice, Baker proposed that the Court adjourn consideration of Eitzen's earlier motion on the grounds that it made "no sense to proceed with [that motion] . . . particularly since [an anticipated] dismissal motion may be unopposed by the Foreign Representative." (*Ibid*, Docket No. 54, ¶ 3) Baker further represented that it had "received no instruction or information to respond to the Motion on a substantive basis, nor any authorization to take discovery in connection with Eitzen's factual allegations. [But that it had] reason to believe that the Foreign Representative may be currently considering whether or not to oppose Eitzen's and/or Armada's potential motion seeking dismissal of the Chapter 15 case." (*Ibid*, Docket No. 54, at 2 n. 1)

6.      The Response Memorandum here likewise seeks an adjournment but notably does not state whether Chetan Shah ever reached a decision to object or consent

to the Joint Motion, or whether he has communicated such a decision to Baker. Baker's ambiguous choice of introductory language ("Baker & McKenzie . . ., as counsel to Chetan Shah, . . . objects") adds to the uncertainty. (Response Memo., Docket No. 59, at 1)

7. So far, it does not appear that the Foreign Representative is heeding the Court's recent admonition that:

> [u]nless the foreign representative takes a flight to the United States and appears in court at a future hearing to present testimony that will provide the Court with some support as to his good faith and the good faith with which the Chapter 15 jurisdiction of this Court was originally asserted I'm inclined to dismiss this case.

(June 14 Transc., [annexed hereto in pertinent part as Exhibit 1], at 13)

8. Setting aside the significant issue of whether the Foreign Representative even opposes dismissal, the Response Memorandum's assertions are without merit and misleadingly portray the plain facts of this case.

### The Petition Was Filed in Bad Faith

9. On the most basic level, the Response Memorandum contends that there is no basis "to support any allegation that the Chapter 15 petition was filed in bad faith." (Response Memo., Docket No. 59, ¶ 1) The Foreign Representative's post-recognition conduct (stonewalling the holders of US judgments to serve his personal interests in the SICA proceeding) is evidence of a pre-existing intention to do so, and of a bad faith filing from inception. (Moving Memorandum, Docket No. 58, ¶¶ 8-17).

10. We submit that the post-recognition conduct of Chetan Shah, who the Court has recognized as having an "undisguised personal economic motivation to protect his investment and personal exposure" (Recognition Decision, Docket No. 36, at 2), shows that the petition was filed for the sole purpose of obtaining a tactical litigation advantage by (i) invoking the

3

protection of the automatic stay in this country and (ii) having Ashapura's supposed reorganization proceed before the BIFR where the Movants are excluded from participation. Such actions are the epitome of a bad faith filing because an action commenced for the sole purpose of obtaining "a tactical litigation advantage [falls] outside the legitimate scope of the bankruptcy laws and may properly be dismissed." *See In re South Canaan Cellular Investments, LLC.*, 420 B.R. 625, 630 (E.D.PA 2009) (Chapter 11 case citing *In re Carbon Corp.*, 200 F.3d 154, 160 [3d Cir. 1999]).

11. Moreover, the recent spike in Ashapura's stock price (a 300% increase since June) reveals the common knowledge of investors in India – that select creditors (such as Armada) will get pummeled but shareholders (such as Chetan Shah and his family) will retain equity value. (Annexed hereto as Ex. 2 is a publicly available graph showing Ashapura's recent stock performance) With such tremendous stock performance by Ashapura, in the midst of a rehabilitation proceeding, Chetan Shah knows that, so long as he can rely upon the automatic stay and abuse US bankruptcy relief, he can reap handsome returns.

12. The end result is that the Foreign Representative commenced, and has continued, this Chapter 15 case solely to preclude Movants from having any viable avenue for obtaining relief. The automatic stay precludes Armada from pursuing judgment enforcement in the United States and, at the same time, Armada cannot participate in the SICA proceeding because Ashapura is frivolously opposing confirmation of a foreign arbitral award and the so-called crystallization of Armada's claims. (Moving Memo., Docket No. 58, ¶ 16 and n.1)

13. In that respect, given that India and the United States are both parties to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Ashapura's efforts to prevent confirmation of the awards in India further demonstrates bad faith. The awards


were confirmed in this country under the same convention that applies in India which thereby demonstrates that there is no justifiable reason why the awards should not also be confirmed in India save for Ashapura's unending opposition. Further, recent case law has emphasized that unjustifiable attempts to prevent confirmation of arbitral awards constitutes bad faith and/or vexatious conduct. *See Digitelcom, Ltd. v. Tele2 Svierge AB*, 2012 WL 3065345 (S.D.N.Y. Jul. 25, 2012) (demonstrating that making meritless attacks on arbitral awards exhibits sufficient bad faith to warrant sanctions) (quoting *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 [11th Cir.2006] for the proposition that "'[w]hen a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken' and that in such a case sanctions may be appropriate.") The import of the foregoing cases does not involve sanctions which have not been sought at this time. The import is, instead, that opposing confirmation of obviously valid arbitral awards (confirmed in the US under the same international convention which governs in India) demonstrates bad faith.

14. In a failing effort to avoid the consequences of Shah's bad faith, the Response Memorandum contends that the issue of bad faith "has been decided by [this Court and the District Court on appeal] in favor of the Foreign Representative." (Response Memo., Docket No. 59, ¶¶ 1 and 5 [erroneously claiming that the issue was "fully litigated at the evidentiary hearing before this Court that resulted in entry of the Chapter 15 recognition order in this case."])

15. Counsel is plainly wrong. Shah's bad faith has never been determined. Indeed, post-recognition, this Court expressly observed that the "contested recognition hearing raised a number of questions as to whether the Chapter 15 process was being undertaken in good faith," and the Court's response was to order Shah to hold periodic status conferences. (March 29

Transcript, Docket No. 47, at 18) Simply put, the issue of Shah's bad faith has been in the room, but not decided, throughout these proceedings.

16. Bad faith in filing a petition can be made manifest and decided based on subsequent conduct. *See In re Head*, 223 B.R. 648, 653-54 (W.D.N.Y. 1998) (dismissing a Chapter 11 and Chapter 13 case in which Names at Lloyd's of London sought US bankruptcy protection to avoid enforcement of English forum selection clauses because there was a "lack of fundamental fairness manifested [by the debtors] at every stage" of the proceedings). There the court observed that "[a]t each step along the way, the Court has had to compel the Debtors to act fairly . . ." "[I]n essence, [the debtors] sought to use the bankruptcy courts of the United States as a 'flag of convenience' by which they endeavor[ed] to hammer Lloyd's into submission." *Id.*

17. The court in *In re Head* explained that its decision was a holding "that a failure to proceed after filing in a fundamentally fair manner, with honesty of intention and with the same type of reasonably founded proposals that Rule 11 requires of all documents that are filed with the court, constitute[d] a non-enumerated 'cause' for dismissal under 11 U.S.C. §§ 1112 and 1307." *Id.* at 653.

18. In this case, Shah both filed in bad faith <u>and</u> has proceeded in a fundamentally unfair manner. The Response Memorandum attempts to redefine Shah's post-recognition conduct but the record is clear.

19. Specifically, the Response Memorandum's contention that the Foreign Representative has fully complied with his obligation to conduct periodic status conferences is false. (Response Memo., Docket No. 59, ¶¶ 7-8) Shah plainly ignored this Court and failed to provide his US attorneys with any relevant, detailed information regarding developments in India. The Foreign Representative's US counsel readily confirmed the same, as follows:

> We've talked, and the common themes of this case from the beginning, and in particular over the last two status conferences, were issues concerning transparency, procedural fairness, and you know, whether or to what extent there were good faith settlement discussions . . . [u]nfortunately I have had very little response, certainly until the last few days . . . [t]he things that may not be transparent to the Court are also not necessarily transparent to me either.

(June 14 Transcr., Ex 1 hereto, at 5)

20. Similar misstatements describe Shah's disregard for any good faith efforts at settlement which would have been in the best interests of the debtor and its creditors alike. The Response Memorandum contends that "in an effort to comply with the Court's directives, Ashapura has been in recent contact with representatives of Movants, who reportedly have agreed to negotiate but purportedly have stated to the Foreign Representative's Indian counsel that they do not wish this Court to be informed about the discussions." (Response Memo., ¶ 12) The Response Memorandum is playing in a grey area of integrity by divulging half-truths and deferring further description to the anticipated commentary of the Foreign Representative's Indian attorney.

21. For obvious reasons, this reply cannot address that Indian attorney's future hearsay commentary. However, to facilitate consideration of whatever description that attorney offers, annexed hereto as Exhibits 3 and 4 are copies of correspondence which Armada's Singaporean attorneys sent to Ashapura's Indian attorneys on August 13 and August 15, respectively. Those exhibits show that: (i) Ashapura, in a very belated manner, contacted Armada's Indian attorneys about supposed negotiations; (ii) Armada's Indian attorneys voiced concerns that such talks were a sham intended to trap Armada and thus proposed that any talks be on without prejudice basis (hence the supposed prohibition on disclosure); (iii) Ashapura then offered a paltry and insulting $2 million on a judgment that exceeds $77 million; and (iv) Ashapura's actions were the legal equivalent of a derogatory gesture intended to convey nothing

7

more than the message that Ashapura has no intent or need to engage in good faith negotiations with Armada.

22. We further submit that representations by Ashapura's Indian counsel, at this stage and in these circumstances, are of no value to the Court. A belated offer of $2 million on a $77 million judgment, made after multiple hearings in which counsel for Ashapura was directed to engage with or bring in the Foreign Representative, are simply too little, too late. Any attempt by Ashapura to finesse a more detailed presentation of Armada's rejection, and to further adjourn these proceedings, is just another tactic.

23. In light of the foregoing, it is clear that Shah filed the Petition in bad faith and has continued to act in bad faith since recognition. Accordingly, the case should be dismissed.

**Other Grounds for Dismissal**

24. The Moving Memorandum demonstrated that the case should be dismissed pursuant to Section 1517(d)'s provision that "this subchapter do not prevent modification or termination of recognition if it is shown that *the grounds for granting it were fully or partially lacking or have ceased to exist.*" 11 U.S.C. § 1517(d) (emphasis added). (*See* Moving Memo. ¶¶ 18-24)

25. As set forth in the Moving Memorandum, the Court granted recognition based upon testimony that even though "the SICA statute does not by its literal terms provide a formal mechanism for participation by unsecured creditors . . . *in practice* unsecured creditors were given a voice, in the discretion of the BIFR." (Recognition Decision, Docket No. 36, at 5-6 [emphasis added]).

26. However, since recognition, further representations have been made by the Foreign Representative's US and Indian attorneys which confirm that Ashapura's SICA

8

proceeding is not, *in practice*, collective because the Movants (unsecured creditors holding very large claims) are <u>*denied participatory rights*</u>. (Moving Memo, Docket No. 58, ¶¶ 22-23)

27. Obviously, none of those post-recognition representations, nor the circumstances which they confirm, were before this Court (at the time of recognition) or the District Court (on appeal). They thus demonstrate that "the grounds for granting [recognition] were fully or partially lacking or have ceased to exist." (Moving Memo., Docket No. 58, at 18-24).

28. Recognition should be terminated and the case dismissed on this ground as well.

**In The Event The Case Is Not Dismissed, Alternative Relief Should Be Granted**

29. The Response Memorandum's opposition to the Movants' request for alternative relief pursuant to Section 1522(b) is equally unavailing.

30. First, the Response Memorandum erroneously contends that the "Movants have not cited any legal authority to support the argument that, as unsecured creditors, they are entitled to the posting" of bonds or other security. (Response Memo., Docket No. 59, ¶ 13) However, Section 1522(b) is clear. "The court may subject relief granted under section 1519 or 1521 [which has been granted here], or the operation of the debtor's business under section 1520(a)(3), to conditions it considers appropriate, including the giving of security or the filing of a bond." The necessary legal authority is available. Moreover, there is no reason to think that the foregoing type of relief should only be available to secured creditors who, by definition, already have security. Perhaps a bond might be given to them as substitute security but the statute provides for either "the giving of security or the filing of a bond." The statute thereby contemplates and authorizes the giving of new security regardless of pre-existing security.

31. There is also no point to the Response Memorandum's argument that Ashapura cannot afford to post security. The Joint Motion requests security from Ashapura or <u>the</u>

interested Foreign Representative himself. Chetan Shah, who personally guaranteed Ashapura's bank debts, has ample assets and those assets have increased all the more in recent months as Ashapura's stock price has increased by 300%. (*See* Ex. 2) Indeed, <u>Shah's posting of security</u> would serve the added purpose of preventing a controlling shareholder from retaining an intact equity interest in Ashapura (or not otherwise contributing to the payment of creditors) if such creditors' claims are ultimately extinguished, grossly diminished, or simply never even considered by the BIFR.

## CONCLUSION

For all the foregoing reasons, Armada respectfully submits that the relief sought in the Joint Motion should be granted and an Order should be issued: (a) terminating Chapter 15 recognition and dismissing the Chapter 15 case; or (b) in the alternative, compelling the Foreign Representative and/or Ashapura to give security or file bonds in favor of the respective Objectors; and (c) granting such other and additional relief as the Court deems just and proper.

Dated: New York, New York
       August 20, 2012

Respectfully submitted,

EATON & VAN WINKLE LLP
*Attorneys for Objecting Creditor*
*Armada (Singapore) PTE Limited*

By: _____
    Alan Van Praag
    Robert K. Gross
    Edward W. Floyd

3 Park Avenue
New York, New York 10016
(212) 779-9910
(212) 779-9928 (fax)